**HUMANA OF KENTUCKY, INC.,**
d/b/a Humana Hospital
Audubon, Movant,

v.

**NKC HOSPITALS, INC.,** Kentucky
Certificate of Need Authority, et
al., Respondents.

No. 87–SC–357–DG.

Supreme Court of Kentucky.

March 31, 1988.

As Corrected April 14, 1988.

As Modified on Denial of Rehearing
June 30, 1988.

Michael D. Baker, John Kevin West, Lexington, Bobby H. Richardson, Glasgow, for movant.

J. Larry Cashen, Susan T. Barnett, Rhonda E. Curry, Louisville, Ryan M. Halloran, John H. Walker, Cabinet for Human Rights, Frankfort, for respondents.

LEIBSON, Justice.

Movant, Humana of Kentucky, Inc., d/b/a Humana Hospital Audubon (Audubon) and respondent, NKC Hospitals, Inc. are competing hospitals in Louisville, Kentucky, both offering cardiac catheterization services and open heart surgery. Additionally, NKC, d/b/a Kosair Children's Hospital ("NKC/Children's") has an established children's pediatric open heart surgery and cardiac catheterization program, authorized and recognized in the State Health Plan which has been adopted by the State Health Planning Council and approved by the Governor. Audubon does not.

The State Health Planning Council and the State Health Plan are created pursuant to KRS Chapter 216B, "Licensure and Regulation of Health Facilities and Services." KRS 216B.040(2)(a)2.a. mandates that the Certificate of Need and Licensure Board "shall ... [e]stablish criteria for issuance and denial of certificates of need ... consistent with the state health plan."

Audubon operates under Certificates of

Need (CON) issued by the Board[1] in 1973 and 1980. Both in the trial court and on appeal NKC/Children's has maintained that it is prepared to prove that Audubon's CONs were issued in response to applications to the state licensure board limited in scope to adult care, that pediatric open heart surgery and cardiac catheterization programs are a separate component of the State Health Plan, and that as such these programs constitute a "substantial change in a health service" as defined in KRS 216B.015(25) that cannot be performed without additional CON approval for the change in service.

Further, NKC/Children's maintains that if Audubon is required to apply for an additional CON to perform this service, the Board will be obliged to refuse because, considering the limited volume of patients in need of such services, cost effectiveness and quality of care for the community will be significantly impaired. KRS 216B.010, "Legislative findings and purposes," provides among the reasons for establishing a state regulatory process, "the proliferation of unnecessary health care facilities, health services and major medical equipment results in costly duplication and underuse of such facilities, services and equipment; and that such proliferation increases the cost of quality health care within the Commonwealth." And, the State Health Plan specifies:

"The importance of ensuring that all existing units are operating at satisfactory levels of utilization cannot be overemphasized in terms of both cost and quality considerations."

In furtherance of this purpose the State Health Plan stipulates, *inter alia*, that no new pediatric open heart surgery program can be initiated until each existing pediatric program is operating at a level of 130 cases annually and that no new pediatric catheterization program can be initiated until each existing pediatric program is perform-

ing catheterizations on 250 children annually.

When advised that Audubon was initiating a pediatric open heart surgery and cardiac catheterization program, NKC/Children's filed with the Board a "request for determination," asking the Board to decide whether Audubon had proper CON authorization to perform these pediatric procedures. The Board utilized KRS 216B.040(3)(f) to respond. This subsection grants the Board the authority to "[e]stablish a mechanism for issuing *advisory opinions to prospective applicants* for certificates of need regarding the requirements of a certificate of need." (Emphasis added). This procedure is by definition "advisory." After an informal public meeting (*not* a statutory hearing), the Board issued an advisory opinion opining that because Audubon's existing CONs made no distinction as to age, Audubon needed no additional CON to perform these pediatric services. There was no statutory mechanism for an appeal from this determination. It is important to note that had the Board ordered Audubon to apply for an additional CON before performing these services, the application procedure provides for public hearings with administrative due process, and an adjudication subject to "[a]n appeal to the Franklin Circuit Court ... from any final decision of the board ... with respect to a certificate of need application ... by any party to the proceedings." KRS 216B.115(1). Further, it is important that the statutory procedure providing due process, found in KRS 216B.085, *et seq.*, provides that any "affected person" as defined in the statute has standing to be a "party to the proceedings" and thereafter would have a right to appeal an adverse decision.

"Affected persons" are defined in KRS 216B.015(2), and this definition includes, in addition to the applicant, "any person residing within the geographic area served or to be served by the applicant; any person who regularly uses health facilities within that

---

1. Our statute provides for a state licensure board (KRS 216B.025), subsequently designated by executive order as the Certificate of Need Authority (CONA) and thereafter as the Commission of Health Economic Control in Kentucky (CHECK). The official title used to designate it a party in this case is the Kentucky Certificate of Need Authority. We will refer to the Authority as the "Board."

geographic area; [and] health facilities located in the health service area in which the project is proposed to be located which provide services similar to the services of the facility under review...."

Thus, if upon NKC/Children's "request for determination" the Board had determined that Audubon needed to apply for a CON, or indeed, if instead of utilizing an advisory opinion the Board had decided to conduct a formal statutory inquiry into whether Audubon needed an additional CON to perform pediatric services, as authorized by KRS 216B.040(2)(b), NKC/Children's would have had a right to be a party to the procedure and to appeal an adverse determination.

The effect of the Board's advisory opinion was to deny a statutory procedure which could then be appealed. Both Audubon and the Board claim that this legal asymmetry exists, i.e., NKC/Children's would have had a statutory right as an affected person to be a party to an application by Audubon to perform these services and to appeal an adverse decision, but NKC/Children's has no remedy if the Board decides, *sans* hearing, that Audubon's existing CONs are adequate to cover the new pediatrics program.

Decisions of the Board, not advisory opinions, are subject to judicial review under KRS 216B.115. The purpose of NKC/Children's request to the Board for a determination as to whether Audubon was properly authorized to perform these pediatric services was to compel a hearing on Audubon's need for and right to an additional CON. However, since the Board responded with an advisory opinion under KRS 216B.040(3)(f), both Audubon and the Board maintain that there is no judicial remedy. This would mean that the Board has plenary power to decide whether a formal hearing on the need for an additional CON is necessary, and that there is no recourse from the Board's decision that it is not.

On February 12, 1986, NKC filed suit in Franklin Circuit Court seeking a declaration of rights as provided for in KRS Chapter 418 and CR 57 to the effect that Audubon's pediatric services were beyond the scope of its authority, and also seeking a writ of mandamus to compel the Board to exercise its authority to enforce the law by prohibiting Audubon's pediatric services pending proper certification. Franklin Circuit Court summarily dismissed NKC/Children's complaint, holding that NKC/Children's had no standing to question the certification of Audubon, that the power to enforce the law in this respect is vested exclusively with the Board under KRS 216B.040(1)(d) and 216B.050. Further, the court held that mandamus is an inappropriate remedy to compel the Board to change its decision.

The Court of Appeals reversed, holding that NKC/Children's had standing to seek a declaration of rights in the present situation, including the right to demand a formal statutory hearing covering whether Audubon's present CONs were sufficient to cover the pediatric procedures in question and, if not, whether an additional CON should be granted; in short, to demand a statutory procedure which could then be appealed to Franklin Circuit Court as provided in KRS 216B.115–.120. Audubon then sought discretionary review of the Court of Appeals' decision in our Court.[2]

■ The question of standing to demand that the Board conduct a formal adjudicative hearing regarding the necessity for and propriety of a CON for Audubon's pediatric service, and standing to file the within action for a declaration of rights when the Board utilized an advisory opinion to decide no action was necessary, represent but one issue. That issue is whether NKC/Children's lawsuit should be classified as nothing more than one competitor seeking to prevent an administrative agency from granting a license or permit to

**2.** One issue raised on discretionary review is that the petition filed in circuit court by NKC/Children's was not broad enough to cover the relief granted. However, the relief sought included "such other and further and equitable relief to which [NKC/Children's] may be entitled." The relief granted did not exceed the scope of the subject matter raised in the petition.

another competitor. If so classified, NKC/Children's has no "judicially recognizable interest in the subject matter" under the law as applied in *HealthAmerica Corporation v. Humana Health Plan,* Ky., 697 S.W.2d 946, 947 (1985) and *Lexington Retail Beverage Dealers Assn. v. Department of Alcoholic Beverage Control Board,* Ky., 303 S.W.2d 268 (1957). The rule is that "a disappointed competitor has no standing to judicially contest the award of a public contract to another entity." *HealthAmerica, supra,* at 947. On the other hand, NKC/Children's claims that the rule in *HealthAmerica* and *Lexington Retail Beverage Dealers* does not apply because this is a different kind of statutory regulatory scheme. The statutes under consideration are more than mere licensing statutes, they are regulatory statutes. The regulatory scheme does not vest uncontrolled discretion in the Board, but imposes certain duties and responsibilities on the Board within a regulatory structure, a structure that also provides for a "state health planning council (KRS 216B.015(24))" charged with the responsibility for developing a "state health plan (KRS 216B.015(23))" with which the board should, in turn, comply in carrying out its regulatory duties. KRS 216B.040(2)(a)2.a.

Under KRS 216B.040(2)(b) the Board is charged with responsibility to:

"Conduct public hearings, as requested, in respect to certificate of need applications, revocations of certificates of need, and denials, suspensions, modifications, or revocations of licenses."

This language contemplates that the Board shall conduct a hearing not just on applications, but on violations, including violations of the State Health Plan, and that the Board shall not grant a certificate of need in violation of the State Health Plan absent substantial evidence of a significant change in circumstances justifying a variance. *Starks v. Kentucky Health Facilities,* Ky.App., 684 S.W.2d 5 (1984). Further, we agree that if an "affected person" as defined in the statute, which includes a competitor, presents a substantial claim of violation of the statutory regulatory scheme, such "affected person" has standing to demand that the Board conduct a proper adjudicative hearing, subject to appeal. The fact that an affected person is a competitor does not give standing, nor does it foreclose it.

We agree with Audubon that NKC/Children's has no contractual right as a licensee, per se, to prevent the Board from licensing or permitting competition. Standing has different criteria depending on the circumstances. Here the regulatory scheme does not provide the Board with uncontrolled discretion as to when to permit competition. The Board is charged with the responsibility for carrying out the State Health Plan and should conduct a certificate of need review before permitting a "substantial change in a health service" which is not "consistent with the state health plan." KRS 216B.040(2)(a)2.a. NKC/Children's maintains that pediatric open heart surgery and cardiac catheterization programs are covered as a component of the state health plan because there is a positive relationship between volume in cardiac services and both cost effectiveness and quality of care. This is ample reason for the broad statutory language defining "affected persons" and for interpreting the proviso establishing their right to be "party to the proceedings" (KRS 216B.015(10)) to include the right to demand a statutory adjudicative proceeding, not just an advisory opinion.

The statute contemplates that the Board shall hold adjudicatory hearings not just for the benefit of licensees, but to protect public health services which may be in danger because of competitive services in violation of the State Health Plan. Standing arises not from being the competition, but from being an affected person, and a broad definition of "affected person" is provided commensurate with protecting the public health. The reason for including competitors in the definition of standing was not so they could prevent competition because they are competitors, but so that they could demand compliance with the statutory scheme for the benefit of the public.

As a general principle administrative agencies are held to "possess the powers

reasonably necessary and fairly appropriate to make effective the express powers granted to or duties imposed on them." 73 C.J.S. Public Administrative Law and Procedure, § 51 (1983). In *Ashland–Boyd County City–County Health Dept. v. Riggs,* Ky., 252 S.W.2d 922, 923 (1952), we stated:

"Powers of administrative boards and agencies are those conferred expressly or by necessary or fair implication. [Citation omitted.] It is a general principle of law that where the end is required, the appropriate means are implied."

Applying this principle, it would make no sense to recognize that "affected persons" as defined in the statute have the power to appear as parties and contest an application for a CON, and to appeal if appropriate to Franklin Circuit Court, and then hold on the other hand that only the Board has the power to order a hearing to decide whether unlicensed health services are being performed.

The movant has cited cases from the federal courts which are not persuasive or controlling. The federal law, the National Health Planning and Resources Development Act of 1974, was not self-executing. It was enacted as an inducement to the states to adopt certificate of need laws as a condition for the receipt of federal funds. The federal law has since been repealed, but the Kentucky certificate of need law remains in place. From the beginning such rights as exist to insist upon enforcement exist by operation of our state law. Our state regulatory scheme provides NKC/Children's with a protected interest, albeit to serve a public purpose. That purpose is set out in KRS 216B.010, to prevent "costly duplication and underuse of ... facilities, services and equipment" where it will be to the detriment of "quality health care," with the areas in need of protection established as components in the state health plan.

The United States Supreme Court decision in *Association of Data Processing Service Organizations v. Camp,* 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970) provides an analogous situation. The Court held that where a statute exists to regulate competition for the benefit of the public, competitors have standing to challenge by declaratory judgment action decisions of a regulatory agency which result in illegal competition. Similarly, in *Hardin v. Ky. Utilities Co.,* 390 U.S. 1, 88 S.Ct. 651, 19 L.Ed.2d 787 (1968), the United States Supreme Court held that a utility company has standing to challenge illegal competition from the Tennessee Valley Authority, and in *City of Chicago v. Atchison, Topeka & Santa Fe R. Co.,* 357 U.S. 77, 78 S.Ct. 1063, 2 L.Ed.2d 1174 (1958), where a motor carrier refused to seek a certificate of convenience and necessity, the United States Supreme Court held that the existing provider had standing to seek review of the validity of an ordinance requiring such certificate.

As stated in *Association of Data Processing Service Organizations v. Camp, supra,* the "question of standing" turns on whether NKC/Children's interest is "within the zone of interests to be protected or regulated." 397 U.S. at 153, 90 S.Ct. at 830. It is. The state health plans in effect from 1980 through 1986 establish that a facility which operates a pediatric open heart or cardiac catheterization service is to be protected from competition unless a need for an additional provider can be demonstrated in an administrative hearing subject to the review process. The hospital is protected so it can maintain a quality, cost effective program. The hospital has the information available to assess the impact of a new program, and if it has no standing to challenge the agency's actions as arbitrary, as a practical matter no one will.

There are decisions from several state courts holding that a competitor does have standing under Certificate of Need statutes to challenge the action of the state agency as arbitrary: *Matter of Wilkesboro, Ltd.,* 55 N.C.App. 313, 285 S.E.2d 626 (1982); *Bradbury Memorial Nursing Home v. Tall Pines Manor Associates,* 485 A.2d 634 (Me.1984); *Sisters of Providence in Washington, Inc. v. Department of Health & Social Services,* 648 P.2d 970 (Alaska 1982). These cases involve a competitor's standing in the certificate of need process, and although not declaratory judgment actions the predicate is the same.

In *McCord v. Pineway Farms,* Ky.App., 569 S.W.2d 690 (1978), the Court of Appeals recognized the standing of an adjoining property owner to seek a declaration of rights to construe the zoning laws against a developer who maintained that the subdivision he proposed was exempt from Planning Authority approval. The court held that there was "a real and immediate actual controversy existing as to what constitutes compliance with the zoning laws under the circumstances presented," justiciable under the "declaratory judgment provisions of KRS 418.040 through KRS 418.-050." *Id.* at 693. Similarly, NKC/Children's has presented a justiciable controversy properly subject to an action for declaration of rights.

Also, *Dougherty v. Kentucky Alcoholic Beverage Control Board,* 279 Ky. 262, 130 S.W.2d 756 (1939), presents an analogous situation. Our Court recognized the propriety of an action seeking a declaration of rights to construe the terms of the alcoholic beverage control law which prohibited the issuance of a liquor license in proximity to a church. The Alcoholic Beverage Control Board had determined that the statutory prohibition should not apply. Our Court held that the Board's decision was "reviewable by the courts," quoting from Mr. Justice Brandeis' opinion in *St. Joseph Stock Yards Company v. United States,* 298 U.S. 38, 56 S.Ct. 720, 740, 80 L.Ed. 1033 (1936):

> "The supremacy of law demands that there shall be opportunity to have some court decide whether an erroneous rule of law was applied and whether the proceedings in which the facts were adjudicated was conducted regularly." *Dougherty, supra,* at 758.

For the same reason NKC/Children's was entitled here to seek a declaration of rights, and appropriate relief.

KRS 216B.040(1)(d) imposes upon the Board the duty to enforce the statute. The Board has no discretion in selective enforcement. If it were clear beyond dispute that Audubon was unlawfully performing unauthorized services, then the Board was required to act to stop it and mandamus would lie to compel the Board to issue appropriate orders to enforce the statute. Likewise, if it were clear beyond dispute that the services in question were not in violation of the regulatory scheme, the within case should be dismissed, not because of lack of standing but because of lack of merit. However, a bona fide conflict exists. Audubon claims that the evidence will prove, as the Board decided in its advisory opinion, that its existing CONs covered these pediatric services. The statute contemplates that the Board "will conduct public hearings, as requested, in respect to certificate of need" in these situations. KRS 216B.040(2)(b).

Mandamus is an appropriate remedy to compel an inferior court or administrative body to adjudicate on a subject within its jurisdiction where it neglects or refuses to do so, but not an appropriate remedy to tell the court or administrative body how to decide or to interfere with its exercise of discretion. *O'Bannon v. Aetna Casualty & Surety Co.,* Ky., 678 S.W.2d 390 (1984); *Shelton v. Simpson,* Ky., 441 S.W.2d 421 (1969). Therefore, although the respondent's declaratory judgment action asked the Franklin Circuit Court to compel the Board to declare Audubon's pediatric open heart surgery and catheterization services unauthorized under existing CONs and to deny any additional CON covering such services, these matters address themselves in the first instance to the Board to determine in a formal adjudicatory hearing, the results of which would be subject to appeal as provided by statute. The Court of Appeals adjudicated the appropriate relief available to the respondents in the circumstances.

The decision of the Court of Appeals was correct. We affirm.

STEPHENS, C.J., and LAMBERT, STEPHENSON, VANCE and WINTERSHEIMER, JJ., concur.

GANT, J., dissents.