PIE MUTUAL INSURANCE
COMPANY, Appellant,

v.

KENTUCKY MEDICAL INSURANCE
COMPANY; and Leroy Morgan, Com-
missioner, Kentucky Department of In-
surance, Appellees.

KENTUCKY MEDICAL INSURANCE
COMPANY, Appellant,

v.

Leroy MORGAN, Commissioner, Ken-
tucky Department of Insurance; and
Pie Mutual Insurance Company, Appel-
lees.

PIE MUTUAL INSURANCE
COMPANY, Appellant,

v.

Leroy MORGAN, Commissioner, Ken-
tucky Department of Insurance; and
Kentucky Medical Insurance Company,
Appellees.

Nos. 88–CA–1658–MR, 88–CA–1416–MR
and 88–CA–1889–MR.

Court of Appeals of Kentucky.

Jan. 5, 1990.

K. Gregory Haynes, Merrill S. Schell, Rhonda E. Curry, Wyatt, Tarrant & Combs, Louisville, George L. Seay, Frankfort, Donald Darby, Jacobson, Maynard, Tuschman & Kalur, Louisville, for Pie Mut. Ins. Co.

Lively M. Wilson, Janet A. Craig, Stites & Harbison, Louisville, for Kentucky Medical Ins. Co.

Patrick Watts, Kentucky Dept. of Ins., Frankfort, for Leroy Morgan and Kentucky Dept. of Ins.

Before EMBERTON, HAYES and WILHOIT, JJ.

WILHOIT, Judge.

The primary issues presented by these appeals are whether one insurer has standing to contest the issuance of a certificate of authority to another insurer, and whether the Commissioner of the Department of Insurance must enforce a settlement agreement executed by two insurers.

A certificate of authority to transact insurance was issued to PIE Mutual Insurance Company (PIE) by the Insurance Commissioner in April 1987. In other states PIE primarily writes medical malpractice policies. In June 1987, Kentucky Medical Insurance Company (KMIC), also a medical malpractice insurer, filed with the Commissioner an application for a hearing pursuant to KRS 304.2–310(2)(b). This statute provides that the Commissioner shall hold a hearing:

> Upon written application for a hearing by a person aggrieved by any act, threatened act, or failure of the commissioner to act, or by any report, rule, regulation or order of the commissioner (other than an order for the holding of a hearing, or an order entered after a hearing, of which hearing such person had notice). Any such application must be filed in the department within sixty (60) days after such person knew or reasonably should have known, of such act, threatened act, failure, report, rule, regulation or order, unless a different period is provided for by other laws applicable to the particular

matter, in which case such other law shall govern.

By the application for a hearing KMIC sought to challenge the issuance of PIE's certificate. KMIC alleged in the application that PIE charged inadequate rates and understated its reserves. KMIC also cited revocation and suspension statutes, KRS 304.3–190 and 304.3–200, in the petition. Prior to the conclusion of the scheduled hearing, PIE and KMIC entered into an agreement and the hearing was held in abeyance. The agreement provided for, among other things, an actuarial audit of PIE which would be reviewed by an actuary employed by KMIC. If the two actuarial firms agreed upon inadequacies of PIE, PIE agreed to correct the deficiency. The general counsel of the Department of Insurance also signed the agreement.

In January 1988 KMIC filed with the Commissioner a motion to enforce the agreement. KMIC also specifically requested a stay of PIE's certificate of authority until it complied with the agreement. The stay was requested pursuant to KRS 304.2–310(5), which states that "[p]ending the hearing and decision [of the KRS 304.2–310 hearing], the commissioner shall suspend or postpone the effective date of his previous action." A hearing on the motion to enforce the agreement was held January 28, 1988. On March 25, PIE repudiated the agreement on the basis it was "illegal and violated public policy." By an April 7 order the Commissioner declined to enforce the agreement, but ordered PIE to file with the Commissioner the information required by the agreement.

KMIC sought review of the Commissioner's April 7 order in the Franklin Circuit Court pursuant to KRS 304.2–370. The circuit court held that KMIC is an aggrieved party and has standing to request a hearing on the issuance of a certificate to PIE, and stayed the effectiveness of PIE's certificate pending the decision on the hearing. PIE appealed to this court, and obtained an order July 21, 1988, staying the effectiveness of the circuit court's suspension of PIE's certificate. KMIC also appealed the circuit court's failure to order enforcement of the agreement.

Meanwhile, KMIC pressed its efforts to obtain a hearing before the Commissioner. PIE filed an original action in circuit court seeking to prohibit the Commissioner from allowing discovery by KMIC. After the circuit court denied the requested relief, PIE appealed to this court. An order was entered November 22 staying the circuit court order requiring a hearing.

The Commissioner contends that KMIC prematurely resorted to the circuit court because he had not made a determination that KMIC was an aggrieved party, pointing to KRS 304.2–310(4): "[i]f the commissioner finds that the application [for a hearing] is made in good faith, that the applicant would be so aggrieved if his grounds are established, he shall hold the hearing...." The circuit court found that it was not necessary for the Commissioner to make this finding because the question of standing is one of law, and that further administrative process to determine standing would be futile. *See Sobolewski v. Louisville Downs, Inc.*, Ky.App., 609 S.W.2d 943, 946–47 (1980).

KMIC contends that it has standing to request a hearing on the issuance of a certificate of authority to PIE. By characterizing its argument in this manner, KMIC claims it is entitled to a suspension of PIE's certificate until a decision is rendered based upon the hearing. *See* KRS 304.2–310(5). PIE and the Commissioner contend that the legislature granted the Commissioner complete discretion to determine if a certificate should be issued, and that KMIC has no standing to challenge the issuance of the certificate. All parties cite *Humana of Kentucky, Inc. v. NKC Hospitals, Inc.*, Ky., 751 S.W.2d 369 (1988). An analysis of this case, as well as the relevant sections of the Insurance Code, is necessary to determine the issue of standing.

In *Humana v. NKC Hospitals*, NKC challenged Humana's offering of pediatric open heart surgery and cardiac catheterization as beyond the scope of its certificate of need (CON). The court held that the CON legislative scheme included competitors in the definition of standing so they could "demand compliance with the statutory scheme for the benefit of the public." 751 S.W.2d at 372. NKC's interest was "within the zone of interests to be protected or regulated," *see Association of Data Processing Organizations, Inc. v. Camp*, 397 U.S. 150, 153, 90 S.Ct. 827, 830, 25 L.Ed.2d 184 (1970), so it can maintain a quality, cost effective program. 751 S.W.2d at 373. The relevant state health plans established that a facility operating a "pediatric open heart or cardiac catheterization is to be protected from competition unless a need for an additional provider can be demonstrated in an administrative hearing subject to the review process.... The hospital has the information available to assess the impact of a new program, and if it has no standing to challenge the agency's actions as arbitrary, as a practical matter no one will." *Id.*

The CON statutory scheme differs from the process governing the issuance of certificates of authority to insurers. An "affected person" is defined in KRS 216B.015(2) to include "health facilities located in the service area in which the project is proposed to be located which provide services similar to the services of the facility under review." Our Supreme Court found significant that KRS 216B.085 provides that an "affected person" has standing to be a party to the CON hearing. 751 S.W.2d at 372. The court also noted that the Commission of Health Economic Control does not have uncontrolled discretion to decide when to permit competition, but must comply with the State Health Plan and "conduct a certificate of need review before permitting a 'substantial change in a health service' which is not 'consistent with the state health plan.' " *Id.*

Turning to the Insurance Code, we find no similar procedure specifically allowing a competitor to contest the issuance of a certificate of authority to another insurer. We begin by noting that KRS 304.1–130 provides that "[p]rovisions of this code relative to a ... particular matter shall prevail over provisions relating to ... such matter in general." KRS 304.3–150 specifies the application procedure for obtaining a certificate of authority. This procedure

entails filing certain documents with the Commissioner. No hearing is required before the certificate is issued; however, a hearing may be scheduled pursuant to KRS 304.2–310. A certificate is issued upon the Commissioner's finding that the insurer has met the requirements of the Insurance Code. KRS 304.3–160(1). KRS 304.3–180(1) provides that "[a] certificate of authority shall continue in force as long as the insurer is entitled thereto under this code, and until suspended or revoked by the commissioner or terminated at the insurer's request...." In short, the issuance of a certificate of authority is not provisional.

KMIC points to no statute, other than the general hearing statute of KRS 304.2–310, which brings it within the "zone of interests to be protected or regulated." The question then becomes whether "a person aggrieved" in that statute was intended by the legislature to include a competitor for purposes of challenging the commissioner's issuance of a certificate of authority. The common law rule in Kentucky is that absent allegations of fraud, bad faith, or collusion, a competitor qua competitor has no standing to challenge the granting of a license or permit to another competitor by an administrative agency. *Pendleton Bros. Vending, Inc. v. Commonwealth, Finance and Administration Cabinet*, Ky., 758 S.W.2d 24 (1988); *Humana v. NKC Hospitals*, Ky., 751 S.W.2d at 371–72; *HealthAmerica Corp. of Kentucky v. Humana Health Plan, Inc.*, Ky., 697 S.W. 946, 947–48 (1985); *Lexington Retail Beverage Dealers Ass'n v. Dep't of Alcoholic Beverage Control Board*, Ky., 303 S.W.2d 268 (1957). The legislature is presumed to know the status of the law at the time a statute is enacted. *Commonwealth, Dep't of Banking and Securities v. Brown*, Ky., 605 S.W.2d 497, 498 (1980). Yet when KRS 304.2–310 was enacted in 1970, the highest court in the state had long since cast doubt upon a competitor qua competitor falling within the classification of a "citizen feeling himself aggrieved" under the provisions of KRS 243.560(1) so as to be able to challenge an order of the Alcoholic Beverage Control Board issuing new retail pack-

age licenses. *Lexington Retail Beverage Dealers Ass'n*, 303 S.W.2d at 270.

Unlike the CON statutory scheme where the legislature defined "affected person," there is no definition of "person aggrieved" in the Insurance Code or indication there that the legislature intended a competitor to fall within that classification for purposes of challenging the Commissioner's issuance of a certificate of authority. Indeed, KRS 304.2–320(1) and 304.2–330(3), dealing with who should be given notice of a hearing and who should be permitted to become a party to a hearing by the Commissioner, indicate that when speaking of a "person aggrieved" the legislature had in mind a person or business entity, *see* KRS 304.1–020, whose pecuniary interest will be directly and immediately affected by the Commissioner's action. While the term "pecuniary interest" is broad enough to cover a myriad of specific financial or property interests, a competitor qua competitor simply would not have its pecuniary interest directly and immediately affected by the entry of another into the field of competition, *Lexington Retail Beverage Dealers Ass'n*, although its long-range pecuniary interests well may suffer.

Decisions from other jurisdictions lend support to our holding that KMIC is not a "person aggrieved" by the issuance of a certificate to PIE. Of particular relevance is *American Surety Co. v. Jones*, 384 Ill. 222, 51 N.E.2d 122 (Ill.1943), in which a group of insurance companies contested the renewal of a certificate of authority to underwriters at Lloyds of London to transact business in Illinois. The group claimed the underwriters at Lloyds had failed to maintain cash or securities sufficient to meet statutory requirements. After reviewing the statutory scheme (similar to our own), the court held that the group lacked standing as any prejudice from the granting or renewal of the certificate was indirect. The court noted "that the only possible interest [the group] could have in this case would be to be free from the competition of a company that had not complied with the provisions of the code." *American Surety Co.*, 51 N.E.2d at 125.

The group also contended that without the ability to inquire into the issuance of a certificate, the Director of Insurance could act "arbitrarily ... to dispense with compliance by certain companies and require strict compliance with the code by others...." *Id.* at 126. The court rejected this argument, stating that a Director who fails to perform his duty is placed in the same position as any public official who improperly exercises his statutory powers. *Id.*

Decisions allowing a third party to challenge the certificate of an insurer involve parties with more direct interests than those asserted by KMIC. In *First National Bank of Maryland v. Commonwealth, Insurance Dep't*, 107 Pa.Commw. 441, 528 A.2d 696 (Pa.Commw.Ct.1987), the court held that the trustee for purchasers of mortgaged-backed securities guaranteed by U.S. Mortgage Insurance Company (USMI) had standing to seek suspension or supervision of USMI. Similarly, the Louisiana Insurance Guaranty Association was found to have standing to challenge an order allowing merger of two insurers and issuing certificate to write particular insurance in *Louisiana Insurance Guaranty Association v. Bernard*, 393 So.2d 764 (La.Ct.App. 1980). The court found significant that the purpose of the Association was to detect, prevent, and be responsible for insolvencies, and the Association's complaint dealt with potential insurer insolvency. *Id.* at 769.

■ Although KMIC's claim of standing rests primarily on its status as a competitor, it also claims standing as a member of the Kentucky Insurance Guaranty Association (KIGA). All insurers to which Subtitle 36 of the Insurance Code applies [1] must be members of the KIGA as a condition of their authority to transact insurance. KRS 304.36–060. One purpose of the KIGA is "to assist in the detection and prevention of insurer insolvencies." KRS 304.36–020. To effectuate this purpose, the legislature imposed upon the board of directors of the KIGA to notify the Commissioner of any insurer which may be insolvent or in a hazardous financial condition. KRS 304.-36–130(1). The board of directors also has other duties relating to policing the financial condition of member insurers, such as requesting the Commissioner to conduct an examination of a member insurer. KRS 304.36–130(2)–(6). That KRS 304.36–080(1)(c) authorizes assessment of member insurers to pay the obligations of the KIGA is insufficient to confer standing to KMIC. We find no legislative intent in Subtitle 36 to grant additional status to an individual insurer to question the issuance of a certificate to another insurer. Furthermore, KMIC's membership in the KIGA does not expose it to any direct and immediate pecuniary loss by the issuance of the certificate of authority.

■ KMIC in its appeal contests the failure of the circuit court to order enforcement of the agreement executed by PIE. The Commissioner declined to enforce the agreement, stating that enforcing it would place him "in a conflict of interest situation that should be avoided by the Commissioner." KMIC contends that settlement agreements entered into during the course of administrative proceedings are enforceable, and the Commissioner has the duty to enforce the agreement.

The Commissioner has only the authority delegated to him by the legislature through statutes. *Goodpaster v. Southern Insurance Agency*, 293 Ky. 420, 169 S.W.2d 1 (1943). KRS 304.2–100(3) states that the Commissioner has the "powers and authority expressly conferred upon him or reasonably implied from the provisions" of the Insurance Code. A review of the code reveals that the Commissioner has no authority to monitor disputes between insurers. The legislative scheme is to encourage competition between insurers, and the Commissioner is charged with the duty of enforcing the provisions of the code. Under the circumstances of this case, at least,

---

**1.** KRS 304.36–030 provides as follows: (1) This subtitle shall apply to all kinds of direct insurance, except life, health, title, credit, mortgage guaranty, and ocean marine insurance.

(2) Notwithstanding subsection (1) of this section, this subtitle shall apply to health insurance where such insurance is written by a member of the Kentucky Insurance Guaranty Association.

we find no duty on the part of the Commissioner to enforce the agreement.

The circuit court judgment is reversed and this action is remanded with directions to dismiss KMIC's complaint.

All concur.