470 So.2d 976 (1985)
ALEXANDER AND ALEXANDER, INC., et al.
v.
STATE of Louisiana, et al.
ALEXANDER AND ALEXANDER, INC., et al.
v.
Hugh CARLETON, et al.
Nos. 84 CA 0352, 84 CA 0353.
Court of Appeal of Louisiana, First Circuit.
May 29, 1985.
Rehearing Denied June 27, 1985.
*977 LeDoux R. Provosty, Jr., Alexandria, for plaintiff-appellant Alexander & Alexander, Inc. and Ralph W. Graham.
Gerald L. Walter, Jr., Baton Rouge, for defendant-appellee The Travelers Ins. Co., Daves Ins. Agency, Inc., Wright Ins. Agency, Inc. and Wright and Percy Ins., Inc.
Charles S. McCowan, Jr., and Pamela C. Walker, Baton Rouge, for defendants-appellees State of La., Through the Div. of Admin., et al, and Hugh M. Carleton, Director of State Purchasing, Div. of Admin., State of La.
Before EDWARDS, SHORTESS and SAVOIE, JJ.
SHORTESS, Judge.
Alexander and Alexander, Inc., and its Senior Vice President, Ralph Graham (plaintiffs) brought these suits after an unsuccessful bid on a State insurance contract. In one suit, plaintiffs sought a writ of mandamus to require the State to comply with the requirements of LSA-R.S. 39:1551, et seq., including holding an administrative hearing on its protest of the award of a contract to another bidder. The trial court dismissed this suit on an exception *978 of prescription. In the other suit, against both the State and the successful bidders, plaintiffs sought damages, a declaration that the contract be voided and awarded instead to them, or at least that the State be ordered to reopen the bidding. The trial court dismissed this suit on exceptions of no cause or right of action.

FACTS
In 1982 the State solicited bids for insurance coverage on its fleet of automobiles, and on August 2, 1982, the bids were opened. The Office of Risk Management evaluated the bids and determined that the low responsible and responsive bidders, see LSA-R.S. 39:1594 G, were Daves Insurance Agency, Inc., on part A of the bid proposal, and Wright and Percy Insurance, Inc., on part B of the bid proposal, both agents of The Travelers Insurance Company.
After learning that the Travelers' agents had been determined the lowest bidders, Ralph Graham sent a letter to E.A. Anderson, the State Risk Manager, suggesting that the successful bids contained conditions which violated one of the bid specifications. The pertinent part of the specifications provided as follows: "On the basis of the specifications, the undersigned proposes to furnish a policy or policies providing insurance as stipulated (or equivalent) at the premiums stated below for three years, effective August 20, 1982 ...."
Both of the Travelers agents' bids were conditioned on an annual adjustment of the premium, not just on the basis of the number of vehicles, but also on the basis of loss experience or a change in the insurance company's overall rating schedule. Graham's letter stated that such a condition gave Travelers almost unlimited flexibility to increase the premium. In uncontradicted testimony given during the hearing on the prescription exception, Graham testified that Bob Munson, one of the Commissioner of Administration's assistants, had told him prior to the formal award of the contract that the bid evaluation committee found plaintiffs' comments meritorious, that there had been a reconsideration of the bids and a decision to award the contract to plaintiffs as the second lowest bidder. Nevertheless, the contract was awarded to the Travelers agents for a three-year term beginning August 20, 1982.
On August 18, 1982, Graham delivered a written protest to Hugh Carleton, the State's Chief Procurement Officer, and gave a copy of the protest letter to E.L. Henry, Commissioner of Administration. By letter dated August 19, Henry informed Graham that the bid proposal in question was issued by the Office of Risk Management under its authority in LSA-R.S. 39:1527 and therefore was not subject to protest under the Louisiana Procurement Code (LSA-R.S. 39:1551, et seq.). However, Henry stated in the letter that he was forwarding a copy of Graham's protest to the State Risk Manager, Edward Anderson, for formal response.
In a letter dated August 20, 1982, Hugh Carleton informed Graham that because the bid proposal was not issued under the Procurement Code, Graham's letter could not be construed as a protest under the Code, and that no further action would be required from Carleton's office. Graham never received any communication from Anderson.
On November 22, 1982, Graham sent a letter to Glen Ducote, Assistant Attorney General, pointing out that there had been no formal response to his protest of the insurance contract award, and requesting that Ducote's office include that protest in its review of another Alexander & Alexander protest already scheduled for hearing.[1]
Graham's letter to Ducote was forwarded to Commissioner Henry, and by letter dated December 9, 1982, Henry informed Graham that his "request to pursue the protest filed August 18, 1982 ... must be denied." Henry explained that Graham had been notified that his protest was denied both by Henry's August 19 letter and *979 Hugh Carleton's August 20 letter, and that an appeal from that denial was not timely. Finally, Henry stated in the letter that Graham had advised both him and Anderson of his decision to abandon the protest.
Graham then retained an attorney, who sent a letter to Commissioner Henry, explaining that Graham's protest had never been officially denied. The letter also asked for compliance with LSA-R.S. 39:1671, and a hearing on the protest.
In the meantime the State held a hearing (under the Procurement Code) on the Travelers contract, seeking cancellationdue in part to the annual premium adjustment condition. The Hearing Officer rendered a decision that the State had intended that the contract bids contain a standard right of cancellation provision or that the contract should be cancelled for non-compliance with bid specifications. The Commissioner of Administration allowed the decision to stand and a cancellation notice was sent to the insurer. Graham testified at the hearing on prescription in the mandamus suit that Assistant Commissioner of Administration Linda Alwood requested him to wait until the Travelers contract matter was resolved and then promised a hearing on his protest. He admitted that he agreed to further delay while the Travelers lawsuit was pending in trial court. On August 15, 1983, the trial court upheld the contract, reversing the decision of the Commissioner of Administration and the hearing officer. We affirmed in Daves v. State, Division of Administration, Office of Risk Management, 459 So.2d 1255 (La. App. 1st Cir.1984); writ denied, 462 So.2d 1246 (La.1985).
On August 29, 1983, Alwood informed plaintiffs' attorney by letter that the appeal relative to the bid was denied in light of the trial court's ruling. The letter also pointed out that Alexander & Alexander had a right to judicial review as outlined in LSA-R.S. 39:1551, et seq. (Louisiana Procurement Code) and LSA-R.S. 49:951 et seq. (Administrative Procedure Act).

MANDAMUS SUIT
Plaintiffs then filed the mandamus suit on September 12, 1983. The trial court issued the mandatory alternative writ, see LSA-C.C.P. art. 3865; Naquin v. Iberia Parish School Board, 157 So.2d 287 (La. App. 3rd Cir.1963). At the hearing, however, the court allowed evidence only on the State's exception of prescription. The court then maintained the exception of prescription, saying in its reasons for judgment that though the plaintiffs timely protested the award of the contract, their suit seeking judicial review was untimely. Plaintiffs appealed.
Section 1552 of the Procurement Code lists among its purposes ensuring "fair and equitable treatment of all persons who deal with the procurement system"; providing increased economy by fostering effective competition; and providing safeguards for maintaining "a procurement system of quality and integrity." Additionally, section 1553 specifically states that the Code is to be supplemented by the general principles of Louisiana law and that an underlying obligation of good faith in performance or enforcement is imposed upon every contract or duty under the Code. "Good faith" is defined as "honesty in fact in the conduct or transaction concerned and the observance of reasonable commercial standards of fair dealings." The competitive sealed bidding requirements were "enacted in the interest of the taxpaying citizens" and have for their purposes "their protection against contracts of public officials entered into because of favoritism and possibly involving exorbitant and extortionate prices. The general law can impose no less duty on the public entity or agency than that it conduct the public's business in a fair, unarbitrary and uncapricious manner." Millette Enterprises, Inc. v. State, Division of Administration and Board of Trustees of State Employees Group Benefits Program, 417 So.2d 6, 10 (La.App. 1st Cir.1982), cert. denied, 417 So.2d 363 (La.1982).
The Commissioner of Administration and Chief Procurement Officer initially informed *980 plaintiffs that the Louisiana Procurement Code was not applicable to their protest because the bid had been issued by the Office of Risk Management under LSA-R.S. 39:1527. However, that statute merely creates the Office of Risk Management and provides in section 1540 that every contract entered into by the State for the purchase of insurance shall be awarded by competitive sealed bidding or competitive negotiation. The Louisiana Procurement Code provides mandatory guidelines, since it applies "to every expenditure of public funds irrespective of their source..." (with enumerated exceptions). LSA-R.S. 39:1554. Procurement means the buying of any supplies, services or major repairs, etc., and includes "description of requirements, selection and solicitation of sources, preparation and award of contract, and all phases of contract administration." § 1556(16). "Supplies" under § 1556(23) means "all property, including but not limited to equipment, insurance, and leases on real property excluding land or a permanent interest in land." (Emphasis ours.) The chief procurement officer is the State director of purchasing who either procures or supervises the procurement of all supplies for the State. LSA-R.S. 39:1564.
When an invitation for bids is issued, it "shall" include criteria to be used in evaluating the bids received, with no criteria used that are not included in the bid invitation. After bid evaluation, the contract is awarded reasonably promptly to the "lowest responsive and responsible bidder whose bid meets the requirements and criteria set forth in the invitation for bids." LSA-R.S. 39:1594. Since such statutes are considered prohibitory law and contracts violating their requirements are wholly illegal, if there is substantial variance between the bid proposal and the bid submitted and accepted, there is no competitive bidding and the contracts are void. Bilongo v. Department of Health and Human Resources, 428 So.2d 1021 (La.App. 1st Cir.1983).
The pertinent requirements of the Procurement Code for protests by unsuccessful bidders about illegal bids are as follows:
PART VI. LEGAL AND CONTRACTUAL REMEDIES
SUBPART A. PRE-LITIGATION RESOLUTION OF CONTROVERSIES
§ 1671. Authority to resolve protested solicitations and awards
A. Right to protest. Any person who is aggrieved in connection with the solicitation or award of a contract may protest to the chief procurement officer. Protests with respect to a solicitation shall be submitted in writing at least two days prior to the opening of bid on all matters except housing of state agencies, their personnel, operations, equipment, or activities pursuant to R.S. 39:1643 for which such protest shall be submitted at least ten days prior to the opening of bids. Protests with respect to the award of a contract shall be submitted in writing within sixty days after bid opening or fourteen days after contract award, whichever is later.
B. Authority to resolve protests. The chief procurement officer or his designee shall have authority, prior to the commencement of an action in court concerning the controversy, to settle and resolve a protest of an aggrieved person concerning the solicitation or award of a contract. This authority shall be exercised in accordance with regulations.
C. Decision. If the protest is not resolved by mutual agreement, the chief procurement officer or his designee shall, within fourteen days, issue a decision in writing. The decision shall:
(1) State the reasons for the action taken; and
(2) Inform the protestant of its right to administrative and judicial review as provided in this Part.
D. Notice of decision. A copy of the decision under Subsection C of this Section shall be mailed or otherwise furnished immediately to the protestant and any other party intervening.
*981 Unsuccessful protestants may administratively appeal further to the Commissioner of Administration the determination by the State Director of Purchasing or his designee. § 1681. The Commissioner's decision may be appealed judicially within fourteen days after its receipt. § 1692. Although traditionally judicial review may not be sought until after exhaustion of all administrative remedies, this court has interpreted § 1671 as permitting protests, but not requiring the administrative remedy as a prerequisite to judicial review. Millette, 417 So.2d at 10.
In this case, plaintiffs never received from the Chief Procurement Officer the initial rejection of their protest, with substantive reasons and appeal rights discussed. Commissioner Henry's December 9, 1982, letter cannot be substituted for that required of the Chief Procurement Officer or his designee as mandated by minimal statutory due process procedures. Due process procedures are violated when the official who must decide appeals based on the Chief Procurement's Officer's substantive decision omits that important administrative step. United States ex rel. Accardi v. Shaughnessy, 347 U.S. 260, 74 S.Ct. 499, 503, 98 L.Ed. 681 (1954). Plaintiffs' suit for mandamus is not a suit seeking judicial review of the Commissioner's ruling on their protest; instead plaintiffs assert that they were never afforded their protest and appeal rights, and ask the court to order the State to comply with the requirements of the Procurement Code regarding protest resolution. See LSA-R.S. 39:1671, et seq.
We hold that the trial court erred in sustaining the exception of prescription as to the mandamus suit. Plaintiffs were entitled to minimal due process rights under Section 1671, which they never got. Prescription never began to toll. We remand to the district court for a complete determination on the rule to show cause why the mandamus should not be made peremptory. Although the contract in question ends August 20, 1985, plaintiffs are entitled to their statutory rights, protection of (possible) property rights and, if successful, damages. Nor does the Daves decision render moot the issues raised by plaintiff. Plaintiffs' protest was lodged prior to the award of the contract, before the State became bound by it. The Procurement Code clearly permits only carefully restricted, fixed escalation clauses tied to recognized economic indices for a bid to be legal and valid. Daves considered only whether an escalation clause was legal, not whether the contract exceeded specific legal requirements. Legal cause for cancellation could exist if the insurer intended an open-ended escalation clause to recoup an unrealistically low primary year premium bid given to stifle competition. The State's argument in the Daves administrative hearing and in trial court bear striking resemblance to plaintiffs' protest, lending substance to Graham's uncontradicted version of the facts.
We have found no authority, however, to support plaintiffs' claim that an administrative hearing on a protest is mandatory. The Procurement Code does not mention hearings in the protest resolution section. Although the Division of Administration has rules for the conduct of hearings for protests (see Louisiana Register, July 20, 1982; Louisiana Register, April 20, 1983), nothing contained therein states that hearings are mandatory, except for disqualified bidders. LSA-R.S. 39:1601. The possibility of disqualification of plaintiffs' bid proposal is implied in defendant's answer to plaintiffs' petition, when the State claimed to have properly rejected petitioners' bid because, in part, that bid "failed to conform with the Louisiana law governing contracts of insurance and premiums charged in connection therewith." The Procurement Code and implementing regulations require procedural due process rights, including an informal hearing, to protect the property right of the lowest responsible bidder to receive a contract.
The type of hearing required by due process varies according to the nature of the protected interest involved, with the Louisiana Supreme Court holding that the *982 interest of the particular bidder in receiving the contract be balanced with "the public interest in having the contract awarded expeditiously to the bidder who can most economically perform the work in a responsible manner." Haughton Elevator Division v. State, Division of Administration, 367 So.2d 1161, 1166 (La.1979). If, as plaintiff claims, the bid evaluation committee had decided to reject the Travelers bid as unresponsive, that would have made plaintiff the lowest bidder. Thus, disqualifying plaintiff could trigger hearing rights. We make no ruling as to whether minimal due process rights as per section 1671 should be ordered or whether a hearing should be required and leave that decision to the trial court's discretion after it has heard the evidence and determined whether plaintiffs were unsuccessful or disqualified bidders. If plaintiffs were unsuccessful bidders, then the trial court should order the Chief Procurement Officer to comply with section 1671(C). If plaintiffs were disqualified bidders, then a hearing as per LSA-R.S. 39:1601 should be ordered.

SUIT FOR DAMAGES
In the damages suit, the Travelers agents filed exceptions of prescription, no right, and no cause of action. The court denied the exception of prescription but maintained the no right and no cause of action and dismissed plaintiffs' suit. Plaintiffs appealed. The Travelers agents answered, asserting that the court erred in denying their exception of prescription.
In a similar case, Millette, 417 So.2d at 10, this court held there was a cause of action under Civil Code article 2315. And the Supreme Court suggested in a footnote in Haughton, 367 So.2d at 1169 n. 9, that there is a right of action against the winning bidder under Civil Code article 2324 upon proof that it participated in some scheme to fix the awarding of a state contract.
Plaintiffs' petition alleges that the bid was divided into two parts to accomodate defendants' business interests and to prevent competitive bidding; that defendants misrepresented their bid by making premiums very low for the first year ($1,267,596.00) and then raising them excessively ($5,256,987.00) thereafter, in violation of bid and statutory restrictions; that there was improper identification of one bidder and its bid bond; that one bid was improperly signed by an individual who was neither an employee of the bidder nor licensed in Louisiana; that several required addendum changes were not included in defendants' bid forms; and that defendants failed to perform the contract in good faith.
The peremptory exception of no cause of action is used to question whether any legal remedy is available to the plaintiff under the allegations of the petition. Since no evidence may be introduced in its support, the exception is triable only upon the face of plaintiffs' petition and any attached documents. LSA-C.C.P. art. 931. All well-pleaded facts are accepted as true, with any doubts resolved in favor of the sufficiency of the petition. The reviewing court must determine whether the law affords a remedy under the circumstances alleged, under any theory of the case. WHC, Inc. v. Tri-State Road Boring, Inc., et al., 468 So.2d 764 (La.App. 1st Cir.1985). If plaintiffs' allegations are accepted as true, not only has the Procurement Code been violated, but plaintiffs have been injured. We reverse and remand to district court for a hearing on the merits.
The court's ruling denying the exception of prescription was correct since the Travelers agents asserted the prescriptive period for judicial review of administrative appeals. (LSA-R.S. 39:1551, et seq.) The correct prescriptive period is that for torts under LSA-C.C. art. 2315.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
NOTES
[1] Apparently plaintiff was protesting another bid, B-132, for marine insurance. That protest was to be reviewed in a hearing under the Procurement Code. Ducote advised plaintiff that the two hearings could not be consolidated, but might be heard on the same day.