596 So.2d 822 (1992)
ALEXANDER & ALEXANDER, INC.
v.
STATE of Louisiana, et al.
No. CA 91 0965.
Court of Appeal of Louisiana, First Circuit.
December 30, 1991.
Rehearing Denied March 13, 1992.
Writ Denied June 19, 1992.
*823 Todd A. Rossi, Charles McCowan, Jr., Baton Rouge, for plaintiff-appellee Alexander & Alexander, Inc.
Robert Steeg, New Orleans, W.P. Wray, Jr., Baton Rouge, for defendant-appellant Laurance Eustis Ins. Agency, Inc.
Gary Ethridge, Kevin Torres, Baton Rouge, for defendant appellee State of La.
Before WATKINS, CARTER and FOIL, JJ.
FOIL, Judge.
This appeal challenges the action of the trial court in ordering that an insurance contract executed by the state be re-bid due to substantive irregularities in the bids submitted *824 to the state. We hold that the state violated several provisions of the Procurement Code in its selection of the lowest responsive bidder and remand this case to the Chief Procurement Officer to render a proper determination on the bid protest in accordance with the statutory mandates of the Procurement Code.

FACTS
The State of Louisiana, through the Division of Administration (DOA) solicited bids for a contract of insurance to provide the state with all risk and personal property coverage and builders risk coverage on state property for a period of three years, commencing July 1, 1990. On May 31, 1990, three insurance companies submitted bids for the contract: Laurance Eustis Insurance Agency, Inc.; Bernard & Nungesser, Inc.; and Alexander & Alexander, Inc.
The bids were opened on May 31, 1990. Eustis' bid set forth a net annual premium in the amount of $1,832,100.00. The net annual premium on the Alexander bid was $2,163,325.00. Ms. Patricia Reed, employed by the Office of Risk Management (ORM) as an underwriting manager, evaluated the bids and prepared a memorandum outlining her findings on June 7, 1990. Ms. Reed found that the Eustis bid was not responsive because it did not provide the required endorsements in the sample copy of the builders risk policy and the company signatures for two of the carriers on the bid were not the designated representatives of the companies authorized to tender premium quotations. She found that only Alexander submitted a responsive bid and recommended that it be awarded the insurance contract. Mr. Seth Keener, Jr., ORM's director, concurred with her findings and recommendation.
By letter dated June 8, 1990, Alexander was notified by Diana Keller, one of ORM's underwriting supervisors, that its bid was accepted and the contract was awarded to it. The letter requested that Alexander issue an insurance binder to the state and Alexander complied. On June 12, 1990, Diana Keller formally informed all bidders that the contract had been awarded to Alexander by ORM.
On June 11, 1990, Eustis filed a formal protest of the award of the insurance contract with Mr. Seth Kenner, Jr. and Ms. Virgie LeBlanc, the Director of State Purchasing. In its letter, Eustis claimed that it was the lowest responsive bidder and challenged the bases upon which its bid had been found non-responsive. All bidders were notified by letter dated June 20, 1990, that a hearing on the Eustis bid protest would be held on June 25, 1990. The letter stated: "As a bidder, you have substantial rights that may be affected by the decision made in this hearing. You have the right to be present at the hearing, to present evidence and to examine the witnesses of all other parties." The letter also apprised the bidders that the hearing would be held in accordance with the Louisiana Administrative Procedure Act, the Louisiana Procurement Code, especially La.R.S. 39:1671, and the Conduct of Hearing Rules, promulgated by DOA for the conduct of hearings in accordance with the Procurement Code. Ms. LeBlanc appointed Robert Carpenter to serve as the hearing officer.
On June 20,1990, Eustis formally supplemented its bid protest with a letter attacking the Alexander bid, outlining five alleged deficiencies in that bid. Eustis requested that the Alexander bid be declared non-responsive and that the award of the contract to Alexander be rescinded. The next day, attorneys for Eustis hand delivered a letter to Mr. Kevin Torres, legal counsel for DOA, setting forth its objection to the holding of a full hearing on its bid and outlining the reasons why a hearing was not required by law. That same day, Virgie LeBlanc sent out a notice to all bidders that the hearing scheduled for June 25 was canceled, advising that correspondence on the state's position on the matter would follow.
On either June 21 or 22, 1990, ORM officials, Ms. Reed, Mr. Kenner, Ms. Keller and ORM's legal counsel met and discussed the alleged deficiencies in the Alexander bid. They found one of the five deficiencies outlined by the Eustis supplemental *825 protest to be substantial, determined that the Alexander bid was not responsive and ordered the contract to be re-bid. This decision was not reduced to writing and no bidder was ever formally notified of the decision. Alexander, obviously unaware that this had transpired, sent letters to ORM and the Department of State Purchasing on June 26 and 27 requesting notice of all hearings and developments with respect to the Eustis bid, and advising of its objection to any action on the bid protest without a hearing. Additionally, it wrote to those officials on June 26 in response to Eustis' supplemental protest which attacked its bid, contending the attack lacked merit and setting forth 16 reasons why the Eustis bid was non-responsive. This letter stated that in the event the Alexander bid was ruled non-responsive or disqualified by the state, the letter was to serve as a formal protest of the ruling, necessitating the holding of an immediate protest hearing.
Some time around June 20, the Commissioner of Administration was notified by the Governor's office that the Eustis bid had been rejected by ORM and he was asked to review it. The Commissioner contacted his general counsel, Kevin Torres, and asked for details on the bid. During that week, the Commissioner attended and participated in meetings with ORM officials regarding the Eustis bid, reviewing the reasons that the bid had been rejected. On June 25, 1990, the Commissioner met with Laurance Eustis, Eustis' attorney and members of the Eustis firm to discuss the claimed irregularities in the Eustis bid. On June 26, the Commissioner received a letter from Eustis' attorney, thanking him for meeting with them on the bid. The letter advised the Commissioner that Eustis never received written notification of the decision of the Chief Procurement Officer (Ms. LeBlanc) or her designee (Mr. Carpenter) on its protest.
The Commissioner issued his ruling on the Eustis protest on June 28, 1990, ordering that the contract awarded to Alexander be rescinded and the insurance contract be awarded to Eustis. He determined that the two irregularities in the Eustis bid were only "minor informalities" which should have been waived by ORM. In a deposition, the Commissioner admitted that his meetings with Eustis representatives influenced his decision, stating that prior to rendering his decision, he had already determined that the two cited irregularities were insignificant. He was not aware of any written ruling having been issued by the Department of Purchasing or ORM on the Eustis protest prior to his decision on that protest. He admitted no hearings had been held on the protest and expressed his belief that he had the power to waive the hearing rules promulgated by DOA.
On June 29, 1990, Alexander filed this lawsuit against the State of Louisiana, through DOA, ORM, the Department of Purchasing, and the directors of those agencies, seeking judicial review of the decision to rescind its contract. Alexander alleged that the defendants failed to follow the requirements of the Procurement Code and the rules for the conduct of a hearing promulgated by DOA. Alexander also contended that it was deprived of its contract without due process of law and attacked the factual findings of the Commissioner.
Subsequently, on July 11, 1990, Alexander wrote a letter to Ms. LeBlanc to confirm its earlier protest of the award of the contract to Eustis and to challenge the responsiveness of the Eustis bid on additional grounds. A hearing was scheduled on the Alexander protest for July 19. Several days before the scheduled hearing, Eustis' attorneys wrote a letter to Ms. LeBlanc to contest the holding of a hearing on the Alexander bid protest. On July 18, Eustis filed a reconventional demand in the lawsuit, seeking an injunction to prevent the hearing scheduled the next day from going forward. The trial court issued a temporary restraining order enjoining Ms. LeBlanc or her designee from holding a hearing on the Alexander protest. On Alexander's request, the court ordered that a hearing be conducted on August 3, 1990, to decide all issues related to the administrative proceedings. This trial began on August 6, 1990.
*826 At the conclusion of the trial, in written reasons for judgment, the trial court ruled that the Eustis and Alexander bids contained many substantive irregularities which could not be waived by DOA. Accordingly, the trial court ordered that both bids be rejected and the case be remanded to DOA to re-bid the insurance contract. Eustis appealed, challenging the trial court's finding that its bid contained substantive irregularities which could not be waived. The State of Louisiana also appealed, contesting the failure of the trial court to make a determination on the method Eustis must employ in canceling the contract, claiming that the cancellation should be ordered on a pro-rata basis rather than a short rate basis. Alexander answered the appeal, assigning as error: (1) the trial court's failure to find that the state did not follow the procedural requirements of the Procurement Code and basic due process protections; (2) the trial court's conclusion that the Alexander bid was non-responsive; and (3) the trial court's failure to require procedural safeguards in the re-bid of the contract. Because of our resolution of the first assignment of error raised by Alexander, we pretermit discussion of all other allegations of error raised by Alexander and Eustis.

THE LOUISIANA PROCUREMENT CODE
The Louisiana Procurement Code governs certain public contracts with the State of Louisiana and was enacted, in part, to "provide for increased public confidence in the procedures followed in public procurement"; "ensure the fair and equitable treatment of all persons who deal with the procurement system of this state"; and "[t]o provide safeguards for the maintenance of a procurement system of quality and integrity." La.R.S. 39:1552(B)(3),(4) and (6). It establishes procedural mechanisms by which aggrieved bidders may seek administrative review of adverse decisions. An unsuccessful bidder may protest a bid award to another contractor under La.R.S. 39:1671 and La.R.S. 39:1683. La. R.S. 39:1671 provides, in pertinent part:
§ 1671. Authority to resolve protested solicitations and awards
A. Right to protest. Any person who is aggrieved in connection with the solicitation or award of a contract shall protest to the chief procurement officer.... Protests with respect to the award of a contract shall be submitted in writing within fourteen days after contract award.
* * * * * *
C. Decision. If the protest is not resolved by mutual agreement, the chief procurement officer or his designee shall, within fourteen days, issue a decision in writing. The decision shall:
(1) State the reasons for the action taken; and
(2) Inform the protestant of its right to administrative and judicial review as provided in this Part.
D. Notice of decision. A copy of the decision under Subsection C of this Section shall be mailed or otherwise furnished immediately to the protestant and any other party intervening.
E. Finality of decision. A decision under Subsection C of this Section shall be final and conclusive unless:
(1) The decision is fraudulent; or
(2) The person adversely affected by the decision has timely appealed administratively to the Commissioner in accordance with R.S. 39:1683.

* * * * * *
La.R.S. 39:1681 and 39:1683 provide as follows:
§ 1681. Authority of the commissioner of administration
The commissioner of administration shall have the authority to review and determine any appeal by an aggrieved person from a determination by the state director of purchasing or his designee which is authorized by R.S. 39:1671....
§ 1683. Protest of solicitations or awards
A. Scope. This Section applies to an appeal addressed to the commissioner of a decision under R.S. 39:1671(C).

*827 B. Time limitation on filing an appeal. The aggrieved person shall file an appeal within seven days of receipt of a decision under R.S. 39:1671(C).
C. Decision. On any appeal under Subsection A of this Section, the commissioner shall decide within fourteen days whether the solicitation or award was in accordance with the constitution, statutes, regulations, and the terms and conditions of the solicitation. Any prior determinations by the director or his designee shall not be final or conclusive.
D. Notice of decision. A copy of the decision under Subsection C of this Section shall be mailed or otherwise furnished immediately to the protestant or any other party intervening.
E. Finality of decision. A decision under Subsection C of this Section shall be final and conclusive unless:
(1) The decision is fraudulent; or
(2) The person adversely affected by the decision has timely appealed to the court in accordance with R.S. 39:1691(A).
The Procurement Code thus establishes a two-step administrative review process on bid protests. An unsuccessful bidder may seek review of the initial rejection of its bid before the Chief Procurement officer, who, under the Code is State Director of Purchasing. La.R.S. 39:1556(3). The Chief Procurement Officer may designate her authority to review the protest to another. The decision of the Chief Procurement Officer or her designee must be made in writing and it must set forth the reasons therefor; notice of that decision must be given to the protestant and any party intervening. A person aggrieved by the ruling of the Chief Procurement Officer or her designee may appeal that ruling to the Commissioner of Administration.
The Rules for the Conduct of a Hearing, promulgated by DOA in accordance with the Procurement Code, further define this two-step administrative process. Under those rules, the Chief Procurement Officer is obligated to give notice to any "interested person" that a bid protest has been filed and must hold a hearing at which the protestant and any interested person are allowed to put on evidence. An "interested person" is defined in the rules as a person who has submitted a bid and whose interests may be affected by the outcome of a protest hearing. The decision of the Chief Procurement Officer must be made in writing and must be sent to the protestant and any interested party. Any person aggrieved by the ruling in the initial hearing phase may seek appellate review before the Commissioner of Administration. The Commissioner's review is limited to the record of the adjudicatory hearing; under certain circumstances, the Commissioner may invoke a hearing.[1]
This court has held that when an aggrieved bidder seeks administrative review under La.R.S. 39:1671, the procedural requirements set forth in that provision establish basic due process protections which must be followed by the state in ruling on a bid protest. Alexander and Alexander, Inc. v. State of Louisiana, 470 So.2d 976 (La.App. 1st Cir.1985), rev'd on other grounds, 486 So.2d 95 (La.1986). The aggrieved bidder in the Alexander case brought a mandamus action to require the state to hold an administrative hearing on its bid protest, which was dismissed by the trial court on an exception of prescription. This court held that prescription never began to run on its action because the state failed to follow the statutory requirements set forth in La.R.S. 39:1671 in rejecting the *828 bidder's protest. The bidder did not receive an initial rejection of its protest in writing with substantive reasons and appeal rights discussed as required in that provision. This court ruled: "[d]ue process procedures are violated when the official who must decide appeals based on the Chief Procurement's Officer's substantive decision omits that important administrative step." Id. at 981. We agree with this principle and conclude that whenever the administrative review process set forth in the Procurement Code is invoked by an aggrieved bidder, the state must follow the code's statutory procedural steps governing that review process. These are basic due process guarantees and were enacted not only to protect the particular aggrieved bidder who initiates the review proceedings, but to further the goals behind the Procurement Code: to ensure public confidence in the procurement system; to ensure that all persons who deal with that system are treated fairly and equitably and to provide the safeguards necessary to maintain a system of quality and integrity. Therefore, on the Eustis bid protest, the state could not revoke Alexander's contract and award that contract to Eustis without following the minimum due process protections established by La.R.S. 39:1671 and La.R.S. 39:1683.
An analysis of the evidence convinces us that the state failed to follow the dictates of the Procurement Code in rendering a decision on the Eustis bid protest. The state's Director of Purchasing is Ms. Virgie LeBlanc; after the Eustis bid protest was filed, she delegated her authority to conduct a hearing to Mr. Robert Carpenter. Neither Ms. LeBlanc nor her designee ever issued a ruling on the Eustis bid protest. Instead, in a review proceeding in which the issue was the responsiveness of the Eustis bid, the same ORM officials who were involved in the initial responsiveness determination ruled in effect that the state should rescind its contract with Alexander because the Alexander bid contained a substantive irregularity. Thus, the initial decision to revoke the Alexander bid in the initial phase of the administrative review proceeding was not made in accordance with the requirements of the Procurement Code: it was not made by the official authorized to make that determination and it was never reduced to writing. Further, Alexander was not notified of the decision to revoke its contract before the contract was awarded to Eustis on June 28, despite the fact that it requested notification of all developments on the Eustis protest by its June 26 correspondence, which also attacked the Eustis bid and thus constituted a formal intervention into the administrative proceedings.
Further, the state did not follow the dictates of La.R.S. 39:1683 in rendering a determination on the Eustis "appeal" which resulted in the award of the contract to Eustis. The Commissioner's role under La. R.S. 39:1683 is that of an appellate review official. The Commissioner is responsible for deciding appeals under that provision based upon a written decision by the Chief Procurement Officer. In this case, the Chief Procurement Officer or her designee never rendered a valid written decision on the Eustis bid protest. Therefore, any decision the Commissioner reviewed on appeal was not a valid written decision rendered by the Chief Procurement Officer or her designee and was thus not properly before the Commissioner on appeal.

CONCLUSION
Because of the foregoing deviations from the statutory procedural mandates established by the Procurement Code, we have no choice but to declare those proceedings which vacated the state's contract with Alexander and which awarded the contract to Eustis to be null and void. Accordingly, the State was not authorized to cancel Alexander's insurance contract and Alexander is entitled to the contract until it is lawfully determined through the proper administrative procedures that it is not. The judgment of the trial court is reversed. We remand this case to the Chief Procurement Officer to conduct proceedings on the bid protest not inconsistent with this opinion. *829 The contract was awarded to Alexander. There has been a protest by Eustis. Therefore, any further action on the contract is stayed pending a final decision on the protest, unless the Chief Procurement Officer makes a written determination that the awarding of the contract to Alexander is necessary without delay to protect the interests of the state under La.R.S. 39:1671(F) If not, then the state may make temporary arrangements under La.R.S. 39:1598 (emergency procurement).
Further, we accept the state's argument that the present Eustis contract should be cancelled on a pro rata basis. We order that that coverage be cancelled as soon as sufficient coverage is obtained for the state under either La.R.S. 39:1671(F) or La.R.S. 39:1598. We order that this be done within a reasonable time and without delay.
Finally, we direct the district court to determine and assess any damages that Alexander may be entitled to under La.R.S. 39:1678.1. We remand that portion of the case to the district court.
Costs in the amount of $3,391.39 are assessed to the State of Louisiana.
REVERSED AND REMANDED.
CARTER, J., concurs in the result.
NOTES
[1] Clearly, the state violated its own rules with respect to the Eustis bid protest. Alexander is an "interested party" as defined by those rules, and was entitled to notice of the protest as well as an opportunity to be heard. This court has previously indicated, however, that there is no statutory requirement (under the Procurement Code) that the state hold a hearing on a bid protest and the Rules do not mandate that a hearing be held where one is not required under the Code. Alexander and Alexander, Inc. v. State of Louisiana, 470 So.2d 976 (La.App. 1st Cir.1985), rev'd on other grounds, 486 So.2d 95 (La.1986). Because we find that the procedural steps mandated by the Procurement Code were not followed in this case, it is unnecessary for this Court to decide whether the state was required to give Alexander an opportunity to be heard before depriving it of its contract either on a statutory or constitutional due process basis.