597 So.2d 562 (1992)
CROCHET EQUIPMENT COMPANY, INC.
v.
The BOARD OF SUPERVISORS OF the LOUISIANA STATE UNIVERSITY and Agricultural and Mechanical College, as Administrators of and d/b/a Louisiana State University Medical Center.
No. 91 CW 0834.
Court of Appeal of Louisiana, First Circuit.
March 6, 1992.
Writ Denied May 1, 1992.
Brian A. Eddington, Baton Rouge, for plaintiff Crochet Equipment Co. Inc.
Mary E. Tharp, Baton Rouge, for defendant Board of Supervisors, LSU, etc.
Before WATKINS, CARTER and FOIL, JJ.
CARTER, Judge.
This matter is before the court on supervisory writs of certiorari and review to determine whether petitioner is entitled to a trial de novo in the district court in this suit for breach of contract.[1]

*563 BACKGROUND
On or about March 30, 1990, petitioner, Crochet Equipment Company, Inc. (Crochet), entered into a contract with the Louisiana State University Medical Center (Medical Center) to furnish and install a medical waste incinerator. Subsequently, on July 5, 1990, the Medical Center amended its purchase order to include the furnishing and installation of an ash removal system in conjunction with the incinerator. Thereafter, on or about November 5, 1990, the Medical Center cancelled its contract with Crochet. The Medical Center claimed that Crochet breached the contract by deviating from the specifications.
Crochet protested the termination of the contract to the director of purchasing at the Medical Center. After a hearing, which was conducted on December 18, 1990,[2] the director of purchasing for the Medical Center determined that Crochet breached its contract with the Medical Center in that Crochet failed to construct the incinerator pursuant to bid specifications. The director of purchasing further found that, after being notified of its non-compliance with the bid specifications, Crochet failed to correct the deviations within the time period allowed. Additionally, the director of purchasing determined that Crochet violated the change order in the amended contract, which added the ash removal system. According to the director of purchasing, the change order required that the lower chamber of the incinerator be constructed with a monolithic refractory rather than a brick refractory, which was less expensive. Crochet was to allow the appropriate credit for the change. However, the incinerator was constructed with a monolithic refractory in the upper and lower chambers and the credit quoted by Crochet reflected the change to both chambers. Accordingly, the director of purchasing determined that the Medical Center was not arbitrary or capricious in terminating the contract with Crochet. The director of purchasing notified Crochet of his decision by letter dated December 27, 1990.
Pursuant to LSA-R.S. 39:1685, Crochet appealed this decision to the Commissioner of Administration (Commissioner). The Commissioner, in affirming the decision of the director of purchasing, determined that the Medical Center could not lawfully negotiate a change in the contract terms different from those set forth in the original bid specifications without a new advertisement to all bidders. The Commissioner stated that "[t]o allow a public entity to award a contract based on one set of specifications and then negotiate a contract for a (sic) item based on another set of specifications, without competitive bidding would violate the very principle [of] the procurement laws of this state." By letter dated January 29, 1991, Crochet was notified of the Commissioner's decision.
Thereafter, on March 12, 1991, Crochet filed a petition in the 19th Judicial District Court against the Board of Supervisors (Board) of the Louisiana State University and Agricultural and Mechanical College, as Administrators of and d/b/a Louisiana State University Medical Center. In its petition, Crochet alleged that the Medical Center's termination of its contract was without just cause and that the termination of the contract by the Medical Center constituted a breach of contract. In response, the Board filed dilatory exceptions raising the objections of vagueness and nonjoinder of a necessary party (the State of Louisiana) and a peremptory exception raising the objection of no cause of action. By judgment dated May 7, 1991, the trial court overruled the dilatory exception raising the objection of vagueness, granted the dilatory exception raising the objection of nonjoinder of a necessary party, and ordered Crochet to join the State of Louisiana as a party defendant. The exception raising the objection of no cause of action was overruled, but the trial court determined that Crochet was entitled to a trial de novo.
*564 From this adverse judgment, the Board applied to this court for supervisory writs of certiorari and review. On September 3, 1991, this court denied the writ insofar as it related to the judgment overruling the peremptory exception raising the objection of no cause of action. However, this court granted certiorari as to the issue of Crochet's entitlement to a trial de novo.
The sole issue presented in this writ application is whether Crochet is entitled to a trial de novo in the 19th Judicial District Court.

THE LOUISIANA PROCUREMENT CODE
The Louisiana Procurement Code, LSA-R.S. 39:1551 et seq., which governs certain public contracts with the State of Louisiana, was enacted, in part, to "provide for increased public confidence in the procedures followed in public procurement"; to "ensure the fair and equitable treatment of all persons who deal with the procurement system of this state"; and "[t]o provide safeguards for the maintenance of a procurement system of quality and integrity." LSA-R.S. 39:1552 B(3), (4), and (6); Alexander & Alexander, Inc. v. State of Louisiana, et al, 596 So.2d 822 (La.App. 1st Cir.1991). The Louisiana Procurement Code applies to every expenditure of public funds by the State of Louisiana for supplies, services, or major repairs. LSA-R.S. 39:1554 B. More specifically, the Louisiana Procurement Code develops a scheme for resolution of contract disputes and establishes a multi-step administrative review process. See LSA-R.S. 39:1673, 1681, 1685, 1691 C, and 1692 C.
A. STEP 1.
Under LSA-R.S. 39:1673 A, in controversies based upon breach of contract, mistake, misrepresentation, or other cause for contract modification or rescission, "[a]ny contractor who seeks a remedy with regard to such controversy shall file a complaint with the chief procurement officer."[3] The chief procurement officer, with the approval of the attorney general, has the authority to settle such contract disputes prior to the commencement of an action in court. LSA-R.S. 39:1673 B. If the controversy between the contractor and the state is not resolved by mutual agreement, the chief procurement officer is required by LSA-R.S. 39:1673 C to issue a written decision stating the reasons for the action taken and informing the contractor of its right to administrative and judicial review as set forth in the Louisiana Procurement Code. The decision rendered by the chief procurement officer under LSA-R.S. 39:1673 C is final and conclusive unless the contractor timely appeals administratively to the commissioner in accordance with LSA-R.S. 39:1685. LSA-R.S. 39:1673 E.[4]
B. STEP 2.
The decision of the procurement officer is reviewable by the commissioner of administration. LSA-R.S. 39:1681 provides that the commissioner of administration "shall have the authority to review and determine any appeal by an aggrieved person from a determination by the state director of purchasing or his designee which is authorized by ... R.S. 39:1673." The aggrieved contractor must file its appeal with the commissioner within fourteen days of receipt of the chief procurement officer's decision. LSA-R.S. 39:1685 B. The commissioner must render a decision within fourteen days and immediately furnish the contractor with a copy of his decision. *565 LSA-R.S. 39:1685 C and D. The decision rendered by the commissioner pursuant to LSA-R.S. 39:1685 C is final and conclusive unless the contractor has timely appealed the commissioner's adverse decision to the proper court in accordance with LSA-R.S. 39:1691 C. LSA-R.S. 39:1685 E.[5]
C. STEP 3.
An aggrieved contractor may commence an action in the 19th Judicial District Court. LSA-R.S. 39:1691 C. Actions under contracts or for breach of contract must be filed within sixty days after the commissioner of administration renders a decision. LSA-R.S. 39:1692 C. LSA-R.S. 39:1691 C gives the 19th Judicial District Court "exclusive venue over an action between the state and a contractor who contracts with the state, for any cause of action which arises under or by virtue of the contract, whether the action is on the contract or for a breach of the contract or whether the action is for declaratory, injunctive, or other equitable relief." In any judicial action, LSA-R.S. 39:1691 D provides (with several exceptions) that the "factual or legal determinations by employees, agents, or other persons appointed by the state shall have no finality and shall not be conclusive, notwithstanding any contract provision, regulation, or rule of law to the contrary."
The Board contends that the trial court erred in finding that Crochet is entitled to a trial de novo. The Board argues that under the Louisiana Procurement Code, and specifically LSA-R.S. 39:1673 C, the aggrieved party is entitled to "administrative and judicial review," which the Board reasons precludes a trial de novo. According to the Board, LSA-R.S. 39:1691 C, which addresses actions by or against the state in connection with contracts, is a venue provision and does not permit a trial de novo. In further support of its contention that Crochet is not entitled to a trial de novo, the Board relies on the rules and regulations promulgated by the Commissioner of Administration pursuant to his authority under LSA-R.S. 39:1561 A. The Board contends that LAC 34:I.3119 C prohibits the 19th Judicial District Court from conducting a de novo review of this matter.
LAC 34:I.3119 C provides as follows:
The review shall be conducted by the Nineteenth Judicial District Court without a jury and shall be confined to the record.... There shall be no right of review by a trial de novo.
Alternatively, the Board contends that the Administrative Procedures Act (APA), LSA-R.S. 49:950 et seq., is applicable. The Board reasons that, because the Louisiana Procurement Code is silent as to a standard of review to be applied, LSA-R.S. 49:964 F sets forth the applicable standard of review. LSA-R.S. 49:964 F provides, in pertinent part, as follows:
The review shall be conducted by the court without a jury and shall be confined to the record.
The courts have consistently held that the provisions of this section of the APA do not authorize a trial de novo in the reviewing court and that the review in such cases is confined to the record as established by the agency. Buras v. Board of Trustees of Police Pension Fund of City of New Orleans, 367 So.2d 849, 853 (La.1979).

ANALYSIS
Generally, requiring participation in administrative dispute resolution schemes gives the agency whose decision is under attack an opportunity to review, to supplement and, if necessary, to correct its decision. Polk v. State, Department of Transportation and Development, 538 So.2d 239, 250 (La.1989). Some administrative dispute resolution schemes are designed to perpetuate a record, which may be used to alleviate some of the burdens associated with trial in district court. These schemes permit the administrative agency to weigh and evaluate the evidence with proper respect *566 being given to its expertise in the matter. See Buras v. Board of Trustees of Police Pension Fund of City of New Orleans, 367 So.2d at 853. However, in other instances, the administrative dispute resolution scheme is not used to create a record for judicial review. See Pardue v. Stephens, 558 So.2d 1149, 1159 (La.App. 1st Cir.1989).
In Corbello v. Sutton, 446 So.2d 301 (La.1984), the Louisiana Supreme Court addressed the issue of applicability of the APA in light of the Conservation Act. The court determined that the APA was not intended to supersede the specific provisions of other administrative acts or to supersede the rights and remedies created under those acts. Instead, the APA was intended to create procedures in those instances where none existed. The court noted that, in matters dealing with the Conservation Act, procedures already existed and that to the extent that there were any inconsistencies, the specific Conservation Act rules applied.
In enacting the Louisiana Procurement Code, the legislature set forth an elaborate scheme for a review process in matters involving the solicitation and award of contracts, the debarment and suspension of persons from consideration in the award of contracts, and the resolution of contract and breach of contract controversies. The Louisiana Procurement Code specifies the required steps in the review process, the time delays within which the rights afforded at that level must be exercised, and the standard of review to be applied at that level in the review process.
With regard to the standard of review to be applied by the district court in hearing matters arising out of contract and breach of contract controversies under the Louisiana Procurement Code, we find that the legislature in enacting LSA-R.S. 39:1691 D, did not require that review in the district court be conducted by review of the agency record. LSA-R.S. 39:1691 D states that, in any judicial action, the factual and legal determinations in administrative proceedings shall have "no finality and shall not be conclusive, notwithstanding any contract provision, regulation, or rule of law to the contrary." LSA-R.S. 39:1691 D. (emphasis added). The term "conclusive" is defined in Webster's Dictionary, 9th edition, as "relating to a conclusion, putting an end to debate or question especially by reason of irrefutability." Black's Law Dictionary, 5th edition, defines "conclusive" as the "shutting up a matter; shutting out all further evidence; not admitting of explanation or contradiction; putting an end to inquiry; final; irrefutable; decisive. Beyond question or beyond dispute." Clearly, if administrative proceedings conducted under the Louisiana Procurement Code prior to the institution of a judicial action can have "no finality" and are "not conclusive," then, after the administrative remedies specified in the Louisiana Procurement Code have been exhausted, proceedings in the 19th Judicial District Court should be by trial de novo. Although not using the specific term "de novo," the legislature clearly contemplated a trial de novo in the district court as an inherent part of the contract dispute resolution scheme of the Louisiana Procurement Code. As such, any regulation to the contrary promulgated by the Commissioner of Administration is beyond the authority described in LSA-R.S. 39:1561 A and is of no effect.
Therefore, we find that the trial court correctly determined that, pursuant to the Louisiana Procurement Code, Crochet is entitled to a trial de novo in the 19th Judicial District Court.

CONCLUSION
For the foregoing reasons, writ previously issued is recalled.
WRIT RECALLED.
FOIL, J., dissents. I do not feel that a trial de novo is warranted in this case.
NOTES
[1] A trial de novo in a judicial proceeding means a trial anew or from the beginning. At a trial de novo, the whole case is retried as if there had been no prior trial. Pardue v. Stephens, 558 So.2d 1149, 1159 (La.App. 1st Cir.1989).
[2] The transcript of the hearing, if one exists, is not in the record.
[3] LSA-R.S. 39:1556(3) defines "chief procurement officer" as "the state director of purchasing and the directors of purchasing of the departments exempt from central purchasing by R.S. 39:1572." LSA-R.S. 39:1572 B(1) exempts the Louisiana State University System from central purchasing. Therefore, the director of purchasing for the various campuses is the "chief procurement officer" under LSA-R.S. 39:1673.
[4] LSA-R.S. 39:1673 E sets forth the conditions upon which the decision of the chief procurement officer becomes final. LSA-R.S. 39:1673 E states:

The decision under Subsection C of this Section shall be final and conclusive unless:
(1) The decision is fraudulent; or
(2) The contractor has timely appealed administratively to the commissioner in accordance with R.S. 39:1685.
[5] LSA-R.S. 39:1685 E provides as follows:

A decision under Subsection C of this Section shall be final and conclusive unless:
(1) The decision is fraudulent; or
(2) The contractor has timely appealed an adverse decision of the commissioner to the court in accordance with R.S. 39:1691 (C).