PENDLETON BROTHERS VENDING, INC.; Carl Everitt Pendleton, Leland Kenneth Pendleton and R. J. Schamback, Movants,

v.

COMMONWEALTH of Ky. FINANCE AND ADMINISTRATION CABINET; Commonwealth of Ky. Transportation Cabinet; Commonwealth of Ky. Department for the Blind and Quatros, Inc., Respondents.

FINANCE AND ADMINISTRATION CABINET and the Department for the Blind, Cross/Movants,

v.

PENDLETON BROTHERS VENDING, INC.; Carl Everitt Pendleton, Leland Kenneth Pendleton and R. J. Schamback, Cross/Respondents.

QUATROS, INC., Cross/Movant,

v.

PENDLETON BROTHERS VENDING, INC.; Carl Everitt Pendleton, Leland Kenneth Pendleton and R. J. Schamback, Cross/Respondents.

Nos. 87–SC–620–DG, 87–SC–772–DG and 87–SC–773–DG.

Supreme Court of Kentucky.

June 30, 1988.

Rehearing Denied Oct. 27, 1988.

Dana R. Kolter, Louisville, for Pendleton Bros., etc.

Monte D. Gross, Frankfort, for Kentucky Finance and Admin. Cabinet.

Karen Powell, Frankfort, for Kentucky Transp. Cabinet.

Frederic J. Cowan, Atty. Gen., Frankfort, for Department for Blind.

William T. Robinson III, Michael Schulte, Covington, for Quatros, Inc.

LEIBSON, Justice.

This is a case of first impression involving the impact on state purchasing procedures of the "Kentucky Model Procurement Code ("KMPC")," KRS Chapter 45A, enacted in 1978 and effective since January 1, 1979 with minor revisions. The fundamental question is whether the KMPC has changed the rules of the game, providing access not previously available to challenge and investigate the propriety of government purchasing contracts. We hold that it has.

The general rule in Kentucky if the KMPC is not involved, as stated in *HealthAmerica Corp. of Ky. v. Humana Health Plan, et al.*, Ky., 697 S.W.2d 946, 948 (1985), is that "absent a showing of fraud, collusion or dishonesty, a disappointed bidder [as such] has no standing to judicially challenge the award of a public contract to another bidder."

The *HealthAmerica* case involved a challenge by a competitor to a contract for health care coverage for state employees awarded under KRS 18A.225. The KMPC was not involved.

The Complaint in the present case does not allege specific acts of fraud, collusion or dishonesty. The trial court's summary judgment specifies this was a fatal defect, stating "the possibility of facts that might later be disclosed [by depositions or discovery] is not sufficient to sustain the plaintiffs' burden of pleading specific facts that give rise to a cause of action." We must decide whether the KMPC has effected a statutory change so that procurement is now a regulated administrative procedure subject to a court challenge if the decision was contrary to law, or arbitrary and capricious. This includes challenge on grounds that statutory procedures were disregarded for reasons of political patronage.

The Complaint was not filed solely by the disappointed bidder, Pendleton Brothers Vending, Inc. ("Pendleton Brothers"). Four additional plaintiffs (apparently principals in that company) allege standing as "taxpayers of the Commonwealth of Kentucky." The respondents acknowledge that taxpayers, as such, may have a judicially recognizable interest in the award of a public contract where a disappointed competitor does not, at least where there is proof "that there was an abuse of discretion on the agency's part amounting to ... arbitrariness or capriciousness in awarding the contract." *Handy v. Warren Co. Fiscal Court*, Ky.App., 570 S.W.2d 663, 664 (1978). In one of the principal cases relied on by the respondents for the general rule denying standing to a disappointed bidder, *Bankamerica-Blair Corp. v. State Highway Comm.*, 265 Ky. 100, 95 S.W.2d 1068, 1071 (1936), our Court stated "[r]elief could be granted here only at the instance of the highway commission *or of a taxpayer.*" Emphasis added.

This case involves Pendleton Brothers' challenge to the legal propriety of an award by the Commonwealth of Kentucky to Quatros, Inc., of a contract to place, service and stock automated vending machines in state-owned rest areas served by the interstate highway system in Kentucky. Pendleton Brothers claims it was legally entitled to the award and that the procedure used to make the award to Quatros, Inc., was a "sham."

The trial court entered protective orders denying plaintiffs the right to depose witnesses and conduct discovery, and then decided the case on summary judgment. So this appeal must be decided on the basis of the Complaint and the Exhibits filed with the Complaint.

The Complaint alleges that initially the project was let for bid in an Invitation to Bid under the competitive sealed bidding process specified in the KMPC. The bid was to be awarded on a "highest commission percentage of gross sales basis, ... to a responsible bidder" as defined in the Invitation to Bid.

Only two firms bid on the project: Pendleton Brothers, whose bid specified a 15.7% commission percentage for the Commonwealth, and Quatros, Inc., who specified 12%. Nevertheless the responsible state agencies, the Transportation Cabinet and the Department for the Blind (who was to share benefit from the project under an applicable federal statute) recommended that the contract be awarded to Quatros, Inc.

Thereafter, newspaper articles appeared pointing to political connections and campaign contributions between three principals of Quatros, Inc., and the Collins for Governor Campaign, including connections with a political action committee headed by Floyd Poore who was Transportation Secretary at the time this invitation for bid was initiated. Following this adverse newspaper publicity, the Purchasing Officer of the Transportation Cabinet cancelled the Invitation to Bid and substituted the "competitive negotiation" procedure specified by KRS 45A.085–.090, which is to be utilized when "the purchasing officer determines in writing that the use of competitive sealed bidding is not practicable."

This new bidding procedure utilized a "Request For Proposal [RFP]" method provided in the KMPC, but included a novel refinement, a five person commission to

evaluate and rate bidding proposals. The Complaint alleges that this "five member evaluation team" was "arbitrarily assembled" and the evaluation procedure was "arbitrarily set."

After this process, Quatros, Inc., once more was awarded the Contract even though again it bid a lower return to the state than Pendleton Brothers, ostensibly because Quatros was the only bidder attaining a 75 point average score under the point system utilized by the evaluation team. Pendleton Brothers filed a protest as permitted by KRS 45A.285. A hearing was held before a hearing officer designated by the Secretary for the Finance and Administration Cabinet. The protest was rejected. The Complaint alleges that at the hearing the Purchasing Officer for the Transportation Cabinet "admitted that the 'point system' was wholly subjective and that the 75 points was arbitrarily picked as a minimum score."

The Complaint further alleges that:

"The administration of the project was in such a way as to demonstrate a purposeful and deliberate attempt to avoid the mandate of KRS Chapter 45A [the KMPC] such as to make said administration invalid."

An affidavit filed by one of the plaintiffs, Leland Pendleton, with plaintiffs' Response to Quatros, Inc.'s, Motion for Summary Judgment stated:

"[O]ne Mac Thompson then Secretary [of the] Finance and Administration Cabinet ... indicated that he was very angry with the newspaper articles and said he personally was involved in turning us down and that Pendleton Brothers Vending, Inc., would never get the contract. Mac Thompson threatened ... lawsuits should we pursue our investigation into the contacts and collusion existent with regard to this project."

The Complaint sought a declaration of rights specifying that "the original Invitation For Bid was improperly cancelled and that the reasons given for cancelling said bid were a sham."

Elsewhere, the Complaint alleges that the "bid solicitation process and its administration" was not "free of political pressure and outside influence" in violation of "the intent and purpose" of the KMPC; and therefore the bid procedure "should be declared invalid."

The Complaint requests that the court declare "the Request For Proposal was improperly used by the Defendants" because "[t]here was no [expressly stated] determination that the competitive sealed method was not practicable," and "even if such determination was made that it would be clearly erroneous." The Complaint alleges that the "Request For Proposal was improperly administrated and thus the award ... invalid," and/or the "Request For Proposal is arbitrary and capricious."

The Complaint asks several different kinds of relief, including to "enjoin defendants from further administering the Contract until resolution of the issues in this case," and to "enjoin Quatros, Inc. and its officers and employees from further participating in any future bids for this project or from further participation in the project in any way."

Franklin Circuit Court dismissed this Complaint in response to a Motion for Summary Judgment. No discovery was taken. The plaintiffs were denied a motion to allow them to take depositions prior to the time answer was due. Then, when the answer was accompanied by a motion for summary judgment, the plaintiffs were denied further discovery because of the pending motions for summary judgment. Thus, the plaintiffs were denied any opportunity to seek evidence to prove the allegations of their Complaint. The summary judgment was in practical effect a dismissal on grounds that the Complaint failed to state a cause of action. The critical elements of the trial court's dismissal were:

1) Plaintiffs, individually and collectively, are characterized as "a disappointed bidder [who] lacks standing to file an action contesting the award of a public contract to another entity."

2) The plaintiffs' attempt to cure this lack of standing by "alleging that political influence is at play and ... an affidavit of one of the individual owners ... [which] is

not at all specific or concrete, ... fails to cure the insufficiency of the plaintiff's pleadings."

3) Plaintiffs do not allege fraud, although they allege "sham." No specific facts constituting fraud are pled. Plaintiffs want to take depositions, which would offer the chance for a "fishing expedition." The possibility that facts might later be disclosed is not sufficient to sustain the plaintiffs' burden of pleading specific facts that give rise to a cause of action.

4) Because the plaintiffs participated in the Request for Proposal (RFP) procedure after the initial sealed competitive bid procedure was withdrawn, "the unlawfulness or impropriety of the procedures used by the Department in calling for the request for proposal ... are waived."

The Court of Appeals affirmed. From its Opinion we glean that it has (1) sustained the summary judgment as to Pendleton Brothers, the unsuccessful bidder, on grounds of failure to plead fraud with sufficient specificity, and (2) sustained the summary judgment against the individual plaintiffs who sued as taxpayers on grounds of having failed to adduce evidence that did "more than raise a suspicion." The trial court denied plaintiffs the right to discovery, so there was never an opportunity to seek evidence to prove plaintiffs' allegations.

We acknowledge the state of the law applicable to public purchasing before the advent of the KMPC, as expressed in cases such as *A & W Equipment Co., Inc. v. Carroll,* Ky., 377 S.W.2d 895 (1964) and *Fosson v. Fiscal Court of Boyd County,* Ky., 369 S.W.2d 108 (1963), was to assume that when a government agency awarded a contract to one other than the lowest bidder, that award was being made to the best bidder, and one who challenged the bid was required to make specific allegations of fraud or collusion, or similar misconduct, at the outset of the lawsuit in order to state a case. See also, *Bankamerica-Blair Corp., et al. v. State Highway Comm., et al.,* 265 Ky. 100, 95 S.W.2d 1068 (1936).

More recently, the Court of Appeals restated this position in *Handy v. Warren* *Co. Fiscal Court,* Ky.App., 570 S.W.2d 663 (1978). We agree with the appellees that under these cases general, nonspecific allegations of fraud, sham, and the like, would be inadequate to plead a cause of action, because CR 9.02 requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." But the purpose of the procurement code is to elevate state purchasing to a higher level of conduct. To accomplish this, the KMPC imposes rules with objective criteria in purchasing, criteria previously lacking, and provides enforcement for these standards.

KRS 45A.010, "Construction-Purposes and policies," specifies:

"(1) This code shall be liberally construed and applied to promote its underlying purposes and policies.

(2) The underlying purposes and policies of this code shall be:

. . . .

(e) To insure the fair and equitable treatment of all persons who deal with the procurement system of the Commonwealth;

(f) To provide increased economy in state procurement activities by fostering effective competition; and

(g) To provide safeguards for the maintenance of a procurement system of quality and integrity."

To this end the act provides, *inter alia,* in Sections 45A.075 through .100, four methods of awarding state contracts, and provides how and when such methods shall be utilized.

The first method provided is "Competitive sealed bidding," which shall be accomplished by invitation for bids which "shall be made on the basis of the lowest bid price or the lowest evaluated bid price, [and] [i]f the latter basis is used, the objective measurable criteria to be utilized shall be set forth in the invitation for bids.... The contract shall be awarded with reasonable promptness by written notice to the responsive and responsible bidder whose bid is either the lowest bid price or lowest evaluated bid price." KRS 45A.080(2) and (5).

KRS 45A.085 provides for an alternative method, "Competitive negotiation," when "the purchasing officer determines in writing that the use of competitive sealed bidding is not practicable," again under standards specified in the procurement act. With the competitive negotiation method, the procurement officer is still limited to making the award on the basis of regulated procedures and objective criteria.

Movants contend that the Purchasing Officer's "Determination and Finding" to conduct a "re-solicitation," was fatally flawed because the statutory language in KRS 45A.085 was lacking. We perceive no defect in the language per se, but there were contradictory statements made that raise questions about the credibility of the procedure. First, the document explains the "invitation to bid was cancelled during the evaluation of offerors when it was determined that the RFP did not provide sufficient information to foster competition." Later it gives a different reason: "specifications cannot be written which will provide the evaluations necessary to place this contract by competitive sealed bid...." The real issue is whether proof of the underlying facts, when developed, does or does not support the statutory prerequisites essential before changing the method of bidding.

It is the complaint of these appellants that the regulatory provisions required by the KMPC were disregarded in this case, both in selecting Quatros, Inc., and in denying the contract to Pendleton Brothers. The Complaint alleges, albeit inartfully, multiple instances of such alleged violation of the KMPC, before stating in a conclusive fashion that the court should set aside the award as in violation of the statute, direct that the contract be awarded to Pendleton Brothers, and provide other monetary relief. The question before us is not whether the appellants would have a claim absent the procurement code, but whether they have a claim under the procurement code.

The code specifies that disappointed bidders have a right to file a protest. KRS 45A.285 states:

"(1) The secretary of the finance and administration cabinet, or his designee shall have authority to determine protests and other controversies of actual or prospective bidders or offerors in connection with the solicitation or selection for award of a contract.

(2) Any actual or prospective bidder, offeror or contractor who is aggrieved in connection with the solicitation or selection for award of a contract may file a protest...."

We duly note that this Section further provides in (4) that the "decision by the secretary of the finance and administration cabinet shall be final and conclusive." This proviso must be construed to mean "final and conclusive" for administrative purposes, not as a barrier against judicial review. To construe it otherwise would be to grant the Secretary plenary power. We have recently decided a similar question in *Humana of Ky., Inc., et al. v. NKC Hospitals, Inc., et al.*, Ky., 751 S.W.2d 369 (1988), applying the principle that the "supremacy of law demands that there shall be opportunity to have some court decide" whether an agency administering a statutory regulatory scheme has applied "an erroneous rule of law ... and whether the proceedings in which the facts were adjudicated was conducted regularly." *See Humana*, at 374.

As in *Humana*, here it is the regulatory scheme which both establishes the rules which must be followed and provides standing to the aggrieved competitor to challenge the decision of the administrative agency in court if he can prove that the decision or award was made in violation of the statute.

This case differs from *Humana* in one respect. In the *Humana* case the administrative agency involved refused to conduct the hearing, so our Order was to compel a hearing which would then be subject to judicial review. Here the agency provided the hearing, but denied the application for relief. Thus the administrative remedy has been exhausted, and the case is ripe for judicial review. The appellants are entitled

to a forum and an opportunity to prove their case.

The trial court denied plaintiffs' motion to take discovery depositions, stating this "would offer the chance for a 'fishing expedition.'" But this is not a common law action for fraud, where specific averments are required under CR 9.02. This is an appeal for judicial review of the final decision of an administrative agency, claiming the agency violated the statutory scheme in making its award.

In such a case there is no legal impediment, per se, to a so-called "fishing expedition." The general rules related to .discovery apply. CR 26.02(1) provides:

"Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery.... It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence."

Bertelsman and Phillipps, *Kentucky Practice*, Vol. 6, p. 475, commenting on CR 26.02(1), state:

"The principle governing feature of Section (1) is that the matter about which discovery may be had must be 'relevant to the subject matter' of the suit, ... [r]elevancy is more loosely construed for purposes of discovery than for trial."

This rule is drawn from Federal Rules of Civil Procedure 26(b), about which the United States Supreme Court stated:

"We agree, of course, that the deposition discovery rules are to be accorded broad and liberal treatment. No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case." *Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947).

The limitations on fishing expeditions relate only to discovery "being conducted in bad faith or in such a manner to [needlessly] annoy, embarrass, or oppress the person subject to the inquiry." *Hickman v. Taylor, supra.* The limitations are those defined by relevancy, privilege, and similar legal considerations, and not by any requirement that a party must be prepared to prove his case at the time when he files suit. The limitations on filing suit are those imposed upon an attorney by Rule 11 which requires a belief formed "after reasonable inquiry [that the pleading] is well-grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law." A summary judgment is only proper after a party has been given ample opportunity to complete discovery, and then fails to offer controverting evidence. *Hartford Ins. Group v. Citizens Fidelity Bank & Trust Co.*, Ky.App., 579 S.W.2d 628 (1979).

Recently we decided a case of similar import. In *E.M. Bailey Distributing v. Conagra, Inc.*, Ky., 676 S.W.2d 770 (1984), we were confronted with the failure of a government agency, a municipal government, to follow the mandate in the Kentucky Constitution Section 164 and KRS 64.510, concerning precontract advertising. We held that such failure rendered the resulting contract void.

The only authority to which we have been cited interpreting the procedure for applying the procurement code are cases from Louisiana permitting court review of whether procurement procedures mandated by the code were being followed and the duties imposed discharged "in good faith." In *Millette Enterprises, Inc. v. State, etc.*, 417 So.2d 6, 10 (La.App., 1 Cir.1982), the Louisiana court stated:

"The public entity or agency can no more invite bids for the furnishing of services, or the purchase of materials and supplies, when its design and intent is to declare a predetermined bid as successful or else reject all bids, then it can award a contract without fulfilling the requirements of the law."

In two other cases, *Alexander & Alexander, Inc. v. State*, 470 So.2d 976 (La.App., 1 Cir.1985) and *Bilongo v. Dept. of Health and Human Resources*, 428 So.2d 1021

(La.App., 1 Cir.1983), the courts held failure to comply with mandatory "shall" provisions of the Code made the procurement void.

The appellees have cited us to no authority from foreign jurisdictions which have similar codes, which are to the contrary.

We do not by this decision impugn the integrity of any government officials. We take it as a given that the presumption is such officials are honest, have performed with integrity, and have carried out their statutory duties to the best of their ability as required by law. Indeed, the statute provides a "presumption of correctness," KRS 45A.280, and states the finding of the public officials carrying out the code "shall not be disturbed unless the decision was procured by fraud or the findings of fact by such official ... do not support the decision." KRS 45A.280.

But by definition a "presumption of correctness" is only presumptive and not conclusive. Just as we do not presuppose misconduct or impropriety, or indeed failure of the involved officials to follow procedures statutorily mandated, we do not regard the actions of such officials as beyond the scope of judicial inquiry.

The availability of legal recourse is essential if the KMPC is to constitute more than a precatory body of law. On the other hand, every purchasing decision or alleged omission is not subject to judicial oversight. We have decided only that here the allegations of the complaint, although inartfully drawn, are sufficient to state a cause of action for declaratory and/or injunctive relief, assuming they can be proved by competent evidence. The movants must develop and prove their case. Movants are no more entitled to summary judgment than are the respondents.

We reverse the decision of the Court of Appeals. We vacate summary judgment entered by the trial court and remand this case to the trial court for further proceedings consistent with this decision.

STEPHENS, C.J., and LAMBERT, STEPHENSON and VANCE, JJ., concur.

WINTERSHEIMER, J., files a separate opinion concurring in part and dissenting in part, in which GANT, J., joins.

WINTERSHEIMER, Justice, concurring in part and dissenting in part.

I concur with that portion of the majority opinion which indicates that plaintiffs who are principals in a company that fails to receive a contract award may claim standing if they are taxpayers of the Commonwealth. I believe they have a judicially recognizable interest in the award of a public contract.

However, I respectfully dissent from the result achieved by the majority because I believe the summary judgment was proper as this case is presented. Disappointed bidders, even if they are taxpayers, should be very specific when they file suit. The complaint in this case is not sufficiently specific in the allegations of fraud or sham. I agree with the Court of Appeals and the circuit court.

Although the circumstances may appear very suspicious, there is no direct allegation that any actual fraud, collusion or dishonesty was involved. The complaint presented to the circuit court was inartfully drawn and presented vague insinuation and innuendo with unsubstantiated implications of political favoritism. These are strong charges and should be dealt with harshly, if true.

Determination of the best bidder for a government contract involves not only the amount of the bid but also the business judgment, capacity, skill and responsibility of the bidder and the quality of the goods proposed to be provided. Here the invitation for bids indicated that the contract award would involve more than merely the highest commission on sales. The fact that a bid presents a higher percentage rate of commission does not automatically indicate that the refusal of the bid was the result of fraud or dishonesty.

Even a taxpayer must present a substantial showing that there is some wrongdoing fraud or arbitrariness to support a lawsuit.

Suspicious circumstances alone is not enough. Unbridled suspicion can easily be abused. Certainly, it is the obligation of the courts at all levels to make a serious inquiry pursuant to all applicable laws.

GANT, J., joins.