## LABORATORY CORPORATION OF AMERICA HOLDINGS, Appellant,

v.

**Hon. Robbie RUDOLPH, Not Individually, But As Secretary, Commonwealth of Kentucky, Finance and Administration Cabinet; Commonwealth of Kentucky, Finance and Administration Cabinet; Commonwealth of Kentucky, Cabinet for Health and Family Services, As Successor to the Cabinet for Families and Children; and Paternity Testing Corporation, Appellees.**

No. 2004–CA–001025–MR.

Court of Appeals of Kentucky.

July 29, 2005.

Rehearing Denied Jan. 11, 2006.

Bruce F. Clark, Mark W. Leach, Stites & Harbison, PLLC, Louisville, KY, for Appellant.

Nora K. McCormick, Assistant General Counsel of Cabinet for Health and Family Services Frankfort, KY, for Appellee, Cabinet for Health and Family Services.

Gregory D. Stumbo Attorney General of Kentucky, Raymond F. DeBolt, Jr., Assistant Attorney General Frankfort, KY, for Appellees, Robbie Rudolph and Finance and Administration Cabinet.

Donald P. Cetrulo, Lexington, KY, for Appellee, Paternity Testing Corporation.

Before GUIDUGLI, McANULTY, and MINTON, Judges.

*OPINION*

McANULTY, Judge.

In this case, Laboratory Corporation of America (LabCorp) seeks review under the Kentucky Model Procurement Code (KMPC) of the former Cabinet for Families and Children's decision to award the contract for statewide genetic testing services for the 2004 fiscal year to Paternity Testing Corporation (PTC). As characterized by LabCorp, this case is about the arbitrary and capricious award to a non-responsive, non-responsible bidder that sought to cover its inexperience by misrepresenting its qualifications in its bid. LabCorp presented evidence in support of its claim in a bid protest before the state agency charged with deciding such protests; however, the agency denied any re-

lief under the protest. Upon review, the trial court concluded that LabCorp did not have standing to seek judicial review because it had not alleged fraud, collusion, dishonesty or political patronage. While we disagree with the trial court's conclusion as to standing, we nonetheless affirm the result for reasons discussed below.

The Commonwealth of Kentucky, by and through the Cabinet for Health and Family Services (the Health Cabinet, formerly known as the Cabinet for Families and Children), contracts with third-party vendors for genetic testing to establish paternity. The KMPC governs purchasing by the Commonwealth. *See* Kentucky Revised Statutes (KRS) Chapter 45A. So the KMPC is applicable to the Health Cabinet's solicitation for bidders for the genetic testing contract (the contract) at issue in this case.

In April of 2003, in accordance with KRS 45A.695, the Health Cabinet issued a Request for Proposals (RFP) for the contract, which was to begin July 1, 2003, and continue one fiscal year through June, 2004. The 25–page RFP detailed the description of services required; the information and data required; the relative importance of the particular qualifications; the deadline and proper form of response; and all necessary attachments. As part of the description of services required, the Health Cabinet established ten vendor requirements. The following statement prefaced the ten enumerated requirements: "To be eligible to submit a bid, Vendor shall meet the following criteria." Vendor Requirement 10, the primary source of contention in LabCorp's appeal, states: "Must have tested a minimum of 15,000 cases in paternity within the last calendar year." The vendor was also to provide supporting documentation that it met this vendor requirement.

Once the vendors submitted their bid proposals, a review committee was to evaluate each proposal using a consensus evaluation methodology. The evaluators were to assign a possible score for ten specified criteria, and the bid would be awarded to the vendor achieving the highest score.

LabCorp, PTC, and two other bidders submitted bid packages in response to the RFP. The Health Cabinet awarded the contract to PTC and notified the other bidders that they had not been selected. Less than two weeks after receiving the notification that it had not been selected, LabCorp filed a bid protest under KRS 45A.285.

While the protest was pending, LabCorp made an open records request under KRS 61.872 to the Health Cabinet and the Finance and Administration Cabinet (the Finance Cabinet) seeking the evaluation of bids and the bid documents submitted by the other bidders.

Four months after LabCorp filed its protest, the secretary of the Finance Cabinet issued a letter denying LabCorp's protest. Two months later, LabCorp received the records it had requested in its open records request. After reviewing the bid documents and the evaluators' score sheets, LabCorp filed another protest through its attorneys.

In support of its second protest, LabCorp alleged that PTC did not meet Vendor Requirement 10. Additionally, LabCorp did not believe that PTC's proposal justified the contract award because the proposal demonstrated that, in addition to the minimum case requirement, PTC was not qualified for a number of other reasons.

PTC's response that it met Vendor Requirement 10 was as follows: "PTC performed approximately 39,844 tests in the calendar year of 2002." As to the support-

ing documentation that it met this requirement, PTC stated, "PTC performed testing on approximately 40,000 individuals in 2002. PTC can provide a printout of all cases and case numbers for further verification upon request. Additional information is also available upon request."

Two weeks after LabCorp filed its second protest, the secretary of the Finance Cabinet issued a letter denying the protest. LabCorp then filed a Verified Complaint and Request for Injunctive Relief in the Franklin Circuit Court. The trial court conducted a hearing the following day and denied LabCorp's motion for injunctive relief.

In its complaint, LabCorp alleged that PTC's bid was inadequate and was non-responsive to the RFP. In particular, PTC did not meet Vendor Requirement 10 based on the paternity industry standard that a "case" customarily includes three individuals to determine paternity—one test of the child, one test of the mother, and one test of the putative father. Based on PTC's response, PTC was ineligible to make a bid.

In addition to PTC's ineligibility, LabCorp asserted in its complaint that the award to PTC was not supported by substantial evidence, and PTC's bid response contained false and misleading information. LabCorp claimed that the consideration of the PTC proposal by the Health Cabinet and/or the Finance Cabinet and the contract award to PTC violated KRS 45A.695, KRS 45A.285 and KRS 45A.290. The consideration and award constituted arbitrary and capricious action under the procedural and substantive due process clauses of the Kentucky Constitution (Section 2) and the United States Constitution.

Less than one month after LabCorp filed its complaint, the Finance Cabinet filed a motion for judgment on the pleadings partially on the grounds that Lab-

Corp lacked standing. Two months later, the trial court granted the motion and cited *Pendleton Bros. Vending, Inc. v. Com. Finance and Admin. Cabinet*, 758 S.W.2d 24 (Ky.1988), in support of its ruling that LabCorp's allegations did not rise to the level necessary to establish standing for judicial review.

On the same day that the clerk entered the trial court's order and judgment, Lab-Corp filed a motion for leave to file an amended complaint. In support of its motion, LabCorp argued that the RFP defined "case" to include the mother, child and father. This is consistent with the industry standard definition of "case." In addition, LabCorp sought to assert the legal position that the actions of the Cabinet in awarding the contract to PTC was "in violation of statute," and was "arbitrary and capricious" under the Kentucky Constitution. Finally, LabCorp believed that PTC's bid proposal contained intentional and knowingly misleading statements that were intended to cause the Health Cabinet to overlook the fact that PTC was unqualified under the Health Cabinet's vendor requirements.

The day after LabCorp filed the motion to amend its complaint, LabCorp responded to the trial court's order with its first motion to alter, amend or vacate. The trial court denied the motion and affirmed its earlier opinion and order. In so doing, the trial court held that LabCorp's new allegation of dishonesty did not confer standing on LabCorp. And even if the allegation were valid, the contract would be voidable by the Finance Cabinet against PTC, but not void.

After the trial court ruled on LabCorp's first motion to alter, amend or vacate, LabCorp filed another motion to alter, amend or vacate that ruling on the grounds that the trial court misconstrued

the holding and import of *Pendleton Bros.* The trial court stated that "[t]he disagreement between the parties regarding the RFP's technical terms does not confer judicial review" and denied LabCorp's second motion to alter, amend or vacate. LabCorp appeals from this series of opinions and orders.

LabCorp raises a number of arguments for our review. First, LabCorp addresses the facts that PTC has fulfilled its contractual obligations for the fiscal year 2004, and the genetic testing contract for the 2005 fiscal year was awarded to a different vendor—not LabCorp or PTC. LabCorp asserts that the issue is not moot in spite of these facts because an actual case or controversy exists and this issue is likely to recur.

Second, LabCorp argues that this Court's standard of review is *de novo* because the trial court issued a judgment on the pleadings.

Third, LabCorp argues that *Pendleton Bros.* does not limit standing for disappointed bidders to allegations tantamount to fraud. *Pendleton Bros.* acknowledges that the KMPC "changed the rules of the game" of state purchasing by "providing access not previously available to challenge and investigate the propriety of government purchasing contracts." *Id.* at 24. Accordingly, judicial review in this case furthers the policies of the KMPC, which are set out in KRS 45A.010 and include (1) providing safeguards for the maintenance of a procurement system of quality and integrity and (2) ensuring fair and equitable treatment of all people who deal with the system. And in administrative proceedings such as this one, "[t]he supremacy of law demands that there shall be opportunity to have some court decide whether an erroneous rule of law was applied and whether the proceedings in which the facts were adjudicated was con-ducted regularly." *Humana of Kentucky, Inc. v. NKC Hospitals, Inc.,* 751 S.W.2d 369, 374 (Ky.1988). LabCorp argues that judicial review for disappointed bidders maintains the supremacy of the law.

Fourth, LabCorp asserts that it has raised justiciable claims that the award to PTC and the denial of LabCorp's protests were arbitrary and capricious and contrary to law. In particular, LabCorp contends that PTC should have been disqualified and not even evaluated because it failed to meet the mandatory criteria of Vendor Requirement 10. This requirement was not a mere technicality. And the dismissive approach taken by the Health Cabinet, the Finance Cabinet and the trial court was contrary to law. According to LabCorp, the trial court relied on one line in *Pendleton Bros.:* "On the other hand, every purchasing decision or alleged omission is not subject to judicial oversight." *Id.* at 30. LabCorp asserts that such reliance, however, swallowed the rule of the case.

Further, LabCorp's fourth argument asserts that it was improper and contrary to law for the Finance Cabinet to rely on its *ex parte* discussions with the contract's purchasing officer in denying LabCorp's bid protest. Finally, LabCorp contends that KRS 45A.695(3) specifies that the RFP was to have provided adequate notice of the type of information and data required of each bidder. And any corrections or changes to the RFP were to be made by a modification. No such modification of Vendor Requirement 10 was ever issued in this case.

Fifth, LabCorp argues that the trial court erred in holding that only the Commonwealth, and not LabCorp, could assert a claim against PTC based on misrepresentation and on being a non-responsive bidder. LabCorp alleges that PTC misrepresented its experience to give a false

impression in order to mislead the Health Cabinet and obtain an advantage over other bidders. Such misrepresentations subvert the purposes of the KMPC.

Based on the above arguments, LabCorp desires this Court to enforce the holding of *Pendleton Bros.* by remanding this case to the trial court for LabCorp to proceed for its bid preparation costs.

In response, PTC argues that LabCorp's cause of action is moot, at least as to PTC. It is moot because PTC has fulfilled its contractual obligations. In addition, LabCorp has never demanded any relief from PTC in either its original or its amended complaint. None of the exceptions to the mootness doctrine apply in this case, and PTC should be dismissed as a party. Notwithstanding this argument, PTC argues that (1) the trial court correctly applied the legal standard for judgment on the pleadings; and (2) LabCorp has no standing to contest the bid award on the basis of a disputed definition of a bid term.

Robbie Rudolph (as Secretary for the Finance Cabinet) and the Finance Cabinet filed a combined response, which mirrors the fundamental arguments of PTC. They argue that the trial court was correct in its determination that LabCorp did not have standing. Alternatively, they argue that the issue is moot because the underlying case no longer exists due to the contract's expiration on June 30, 2004.

Consistent with the arguments of the three other appellees, the Health Cabinet contends that LabCorp's cause of action is moot. In addition, the Health Cabinet addresses several perceived inconsistencies in LabCorp's arguments on appeal and reiterates that the Health Cabinet's contract award was not arbitrary, capricious or contrary to law.

The threshold question is whether the controversy over the contract award in this case is moot. Considering LabCorp's argument that it is entitled to judicial review because the Health Cabinet's decision to award a contract to an unqualified bidder was arbitrary, capricious and contrary to law, we believe that an actual case or controversy exists in spite of the underlying contract's expiration. The KMPC allows for bid protests, and Kentucky law affords judicial review of administrative actions if an award is arbitrary, capricious or made in violation of the KMPC, as LabCorp alleges. *See* KRS 45A.285(2) and *Pendleton Bros.*, 758 S.W.2d at 25, 28–29. The matter is not moot.

We now turn to the issue of the proper standard of review. As mentioned above, we must decide whether the contract award to PTC by the Health Cabinet and as upheld by the Finance Cabinet was arbitrary, capricious or contrary to the provisions of the KMPC. *See id. See generally American Beauty Homes Corp. v. Louisville and Jefferson County Planning and Zoning Comm'n*, 379 S.W.2d 450, 456 (Ky.1964) ("Basically, judicial review of administrative action is concerned with the question of *arbitrariness.*")

Under KRS 45A.285, the KMPC allows for an aggrieved prospective bidder to file a protest with the secretary of the Finance Cabinet. In its entirety, KRS 45A.285 is as follows:

(1) The secretary of the Finance and Administration Cabinet, or his designee, shall have authority to determine protests and other controversies of actual or prospective bidders or offerors in connection with the solicitation or selection for award of a contract.

(2) Any actual or prospective bidder, offeror, or contractor who is aggrieved in connection with the solicitation or selection for award of a contract may file a protest with the secretary of

the Finance and Administration Cabinet. A protest or notice of other controversy must be filed promptly and in any event within two (2) calendar weeks after such aggrieved person knows or should have known of the facts giving rise thereto. All protests or notices of other controversies must be in writing.

(3) The secretary of the Finance and Administration Cabinet shall promptly issue a decision in writing. A copy of that decision shall be mailed or otherwise furnished to the aggrieved party and shall state the reasons for the action taken.

(4) The decision by the secretary of the Finance and Administration Cabinet shall be final and conclusive.

Under the KMPC, any decision of any official or board "appointed by the Commonwealth concerning any controversy arising under, or in connection with, the solicitation or award of a contract, shall be entitled to a presumption of correctness and shall not be disturbed unless the decision was procured by fraud or the findings of fact by such official ... do not support the decision." KRS 45A.280.

In *Pendleton Bros.*, Kentucky's highest court determined that the KMPC provided "access not previously available to challenge and investigate the propriety of government purchasing contracts." Specifically, the *Pendleton Bros.* court held that the KMPC had effected a statutory change so that procurement is now a regulated administrative procedure subject to court challenge if the decision is contrary to law, or arbitrary and capricious. *See id.* at 25. To aid in the application of the court's holding, however, it cautioned that "every purchasing decision or alleged omission is not subject to judicial oversight." *Id.* at 30.

▮ LabCorp alleged in its complaint that the Health Cabinet acted contrary to various provisions of the KMPC in considering PTC's bid and in ultimately awarding the contract to PTC. In addition, LabCorp asserted that the Health Cabinet and the Finance Cabinet acted arbitrarily in denying its protest and in failing to grant relief. As pleaded—a procurement decision that was both contrary to law and arbitrary—LabCorp had standing to judicially challenge the award of the contract to PTC. But our analysis does not stop here as we now consider the evidence in support of LabCorp's claim.

▮ Turning to the facts of this case, LabCorp filed two bid protests. It filed the first after its initial notification that the Health Cabinet had awarded the contract to another bidder. Once LabCorp received PTC's bid proposal, it filed another protest in which it alleged that PTC was unqualified under the RFP's Vendor Requirement 10.

The secretary of the Finance Cabinet determined the merits of LabCorp's protests and denied both of them. In the secretary's final determination, as to Vendor Requirement 10, it reasoned that the solicitation did not define the terms, "case" or "test." Although not defined in the solicitation, the secretary found that the purchasing officer responsible for the procurement and for drafting the specifications intended that a vendor must have performed a minimum of 15,000 tests, rather than 15,000 cases. And the secretary found that the purchasing officer discussed and clarified this issue at the mandatory pre-bid conference attended by all bidders, including LabCorp.

On the issue of information ascertained and provided at the mandatory pre-bid conference, the secretary found that the purchasing officer stated, in response to a bidder question, that 19,039 tests were

completed for the 2002 fiscal year. From this number, the secretary reasoned as follows:

> [A] requirement that a vendor must have completed 15,000 tests, rather than 15,000 cases, would be in keeping with the agency's prior experience and requirements. Since the solicitation did not define "case" or "test," and particularly since the agency's intent was clarified at the aforementioned mandatory pre-bid conference, the agency reasonably and justifiably relied on the statement that PTC had performed approximately 40,000 tests as meeting the requirements of the RFP.

LabCorp seizes on the latter statement that the term was clarified at the pre-bid conference as evidence that a modification was warranted under administrative regulations promulgated to carry out the KMPC. *See* 200 KAR 5:311. We do not believe, however, that the failure to issue a modification was arbitrary, capricious or contrary to the law. It was not unreasonable for the secretary to conclude that the purchasing officer clarified a bid term and such clarification was in keeping with the General Information Section of the RFP and did not rise to the level of a modification. *See* Section IV, General Information 10 ("Any information supplied by the Cabinet in response to a prospective applicant's questions must be supplied to all identified prospective applicants;").

On appeal, LabCorp takes issue with the secretary's alleged reliance on *ex parte* communications with the purchasing officer. The record does not reflect that LabCorp ever requested an administrative hearing, which would have afforded it an opportunity to call witnesses and, perhaps more importantly, cross-examine witnesses. As no party requested a hearing and no hearing was conducted, LabCorp will not be permitted in this appeal to take issue with the secretary's reliance on the purchasing officer's statements of intent with regard to terms in Vendor Requirement 10.

In summary, based on LabCorp's arguments and evidence in support of its bid protest, the award in this case was not made in violation of the provisions of the KMPC. But LabCorp was entitled to judicial review based on that which it pleaded in its complaint. The substance of LabCorp's claim, however, concerns an alternative interpretation of a bid term. A large measure of discretion is to be afforded to a contracting officer in a negotiated procurement, and this Court, like the lower court and the secretary of the Finance Cabinet, is unwilling to accept LabCorp's interpretation over that of the contracting officer absent a valid reason for doing so. LabCorp has provided no such reason. Thus, while we disagree with the trial court's conclusion as to standing, we affirm as to the result reached by the trial court that this case was no more than a disagreement over a bid term that was adequately addressed at the administrative level.

GUIDUGLI, Judge, concurs in result.

MINTON, Judge, concurs.