RENDERED: MARCH 15, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0958-MR

WILLIAM WILLOUGHBY                                          APPELLANT

             APPEAL FROM JESSAMINE CIRCUIT COURT
v.             HONORABLE C. HUNTER DAUGHERTY, JUDGE
               ACTION NO. 21-CI-00349

TINA MOORE AND TINA
HAMILTON MOORE,
ADMINISTRATRIX OF THE ESTATE
OF DANA E. MOORE                                     APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: EASTON, ECKERLE, AND JONES, JUDGES.

JONES, JUDGE: William Willoughby appeals from an order of the Jessamine

Circuit Court granting summary judgment in favor of defendants Tina and Dan

Moore in this personal injury case.[1] We affirm.

---

[1] Throughout the pendency of the underlying action, the defendant was referred to as Dan Moore. The notice of appeal also identifies him as "Dan Moore." However, he passed away during the pendency of this appeal and probate documents identify him as "Dana E. Moore." This Court entered an order substituting Tina Hamilton Moore, Administratrix of the Estate of

## I.    FACTUAL AND PROCEDURAL BACKGROUND

In the summer of 2020, Dan Moore contacted Willoughby about painting his barn. Willoughby is an experienced painter of both barns and fences in the central Kentucky area.[2] Willoughby visited Moore's farm and quoted him a price of $1,500.00 to paint the barn, including the metal roof.[3] Moore informed Willoughby that he wanted to remove various items and farm implements that were near the sides of the barn and that he would contact Willoughby when he was ready for him to start the job. Willoughby informed Moore that he could "spray through" the various items near the barn, as well as vines that were attached to the barn, but Moore was not receptive to this idea. The parties also discussed that Moore would trim some tree branches near the stripping shed attached to the barn. No written agreement was ever executed between the men.

Willoughby arrived at Moore's farm to paint the barn on or about September 17, 2020. He testified that he noticed tree debris and rust on the roof of the attached stripping shed, so he knew Willoughby had not cleared debris from

---

Dana E. Moore as a party appellee in place of Dan E. Moore. We refer to him as "Dan" in this Opinion for the sake of simplicity.

[2] At the time of his deposition, Willoughby was forty-eight years old. He testified that he had been painting barns since he graduated from high school. However, he estimated that from 2012 until the time of his fall in September 2020, he had only painted a total of four or five barns.

[3] It appears from the record before us that the initial quote to paint the barn and roof may have been $1,200.00, but it is undisputed that Moore paid Willoughby $1,500.00.

the roof of the barn. After painting the sides of the barn, Willoughby climbed a ladder to access the barn's roof, which he estimated to be approximately twenty feet off the ground. Willoughby claims he was on the roof for less than one minute before he realized he was standing on debris and, as soon as he realized his footing was unstable, he fell off the roof.

As a result of his fall, Willoughby sustained numerous injuries to his arms, shoulders, spine, and neck. Nevertheless, he returned to Moore's property two days later to complete the job. Prior to returning, Willoughby rented a lift to access the roof of the barn.

Willoughby filed a complaint against the Moores on June 21, 2021, alleging negligence and premises liability, negligence *per se*, and gross negligence. Discovery commenced and, after the Moores deposed Willoughby on December 28, 2021, they filed a motion for summary judgment, arguing that Willoughby was an independent contractor and the Moores did not breach the applicable duty of care. In response, Willoughby argued he was an invitee and that the Moores had a duty to discover and warn him about any defects or dangers in the roof. Following a hearing on March 24, 2022, the circuit court agreed with the Moores and granted summary judgment in their favor. The court entered two orders. One was handwritten and contemporaneous with the hearing; the other was entered approximately two weeks later. Willoughby filed a motion to reconsider, clarify,

or alter, amend, or vacate, which was denied by the circuit court. This appeal followed. Further facts will be developed as necessary.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Kentucky Rule of Civil Procedure (CR) 56.03. The movants bear the initial burden of demonstrating that there is no genuine issue of material fact in dispute. The party opposing the motion then has the burden to present, "at least some affirmative evidence showing that there is a genuine issue of material fact for trial." *Steelvest Inc. v. Scansteel Service Center, Inc.*, 807 S.W.2d 476, 482 (Ky. 1991). When a circuit court grants a motion for summary judgment, the standard of review for the appellate court is *de novo* because only legal issues are involved. *Hallahan v. The Courier Journal*, 138 S.W.3d 699, 705 (Ky. App. 2004). We must consider the evidence of record in the light most favorable to the non-movant (*i.e.*, Willoughby) and determine whether the circuit court correctly found there was no genuine issues as to any material fact and that the moving party was entitled to judgment as a matter of law. *Scifres v. Kraft*, 916 S.W.2d 779, 780 (Ky. App. 1996).

We review for abuse of discretion the circuit court's implicit determination that sufficient time had passed for discovery at the time it ruled on the motion for summary judgment. *Blankenship v. Collier*, 302 S.W.3d 665, 668 (Ky. 2010).

### III. ANALYSIS

On appeal, Willoughby's arguments are often overlapping. He generally argues the circuit court improperly granted summary judgment for numerous reasons, including that there were questions of fact, and that discovery was not complete. He also argues his general/ordinary negligence and premises liability claims should move forward.

Despite Willoughby's attempts to muddy the waters with various theories of liability, the most significant facts of the case are undisputed and our task on appeal is straightforward. The issue before us concerns the applicable duty of care the Moores owed Willoughby and whether they breached that duty. A court may appropriately dismiss a claim on a motion for summary judgment when the plaintiff fails to show a breach of the applicable duty of care, resulting in no negligence as a matter of law. *Shelton v. Kentucky Easter Seals Soc., Inc.*, 413 S.W.3d 901, 904 (Ky. 2013). Further, "questions of breach may be properly decided by summary judgment when a [hazard] cannot be corrected by any means or when it is beyond dispute that the landowner had done all that was reasonable."

*City of Barbourville v. Hoskins*, 655 S.W.3d 137, 142-43 (Ky. 2022) (internal quotation marks and footnote omitted).

"Kentucky law remains steadfast in its adherence to the traditional notion that duty is associated with the status of the injured party as an invitee, licensee, or trespasser." *Shelton*, 413 S.W.3d at 909. However, "**premises liability claims are treated differently when the plaintiff is an independent contractor as opposed to an ordinary business invitee**." *Dexter v. Hanks*, 577 S.W.3d 789, 795 (Ky. App. 2019) (emphasis added); *Auslander Properties, LLC v. Nalley*, 558 S.W.3d 457, 467 (Ky. 2018) ("In the context of a premises liability claim, a landowner is not liable to an independent contractor for injuries sustained from defects or dangers that the independent contractor knows or ought to know of.").

"An individual is the agent of another if the principal has the power or responsibility to control the method, manner, and details of the agent's work." *Nazar v. Branham*, 291 S.W.3d 599, 606-07 (Ky. 2009). "If, however, an individual is free to determine how work is done and the principal cares only about the end result, then that individual is an independent contractor." *Id.* Whether Willoughby was an independent contractor is a question of law. *Uninsured Employers' Fund v. Garland*, 805 S.W.2d 116, 117 (Ky. 1991).

Moore contacted Willoughby about painting his barn.[4] Willoughby visited the barn and quoted Moore a price for the job. He was an experienced painter and had his own painting equipment, including sprayers. Moore did not direct the work in any way except to specify that he wanted the barn painted black and the roof painted chrome. Willoughby was free to determine how best to paint the barn, including what equipment to use. Moore was concerned only that the barn and roof were painted, and he did not supervise the work. In fact, he left to attend a baseball game on the second day of the painting. In other words, Moore cared only about the result and did not interfere in Willoughby's process of painting the barn.[5] We agree with the circuit court's determination that Willoughby was an independent contractor. *See Everett v. Edelen*, 672 S.W.3d 196 (Ky. App. 2023).

We now turn to the duty of care Moore owed to Willoughby.

In the context of a premises liability claim, a landowner is not liable to an independent contractor for injuries sustained from defects or dangers that the independent contractor knows or ought to know of. Only when the defect or danger is hidden and known to the owner, and neither known to the contractor, nor such as he ought to

---

[4] It is undisputed that Willoughby had no contact whatsoever with Moore's wife, Tina.

[5] Willoughby repeatedly points out that Moore should have informed him that he needed to use a lift to access the roof of the barn. This argument has no basis in the law. Willoughby admitted that he rented lifts to paint other barns in the past. Moore was under no obligation to furnish Willoughby with any safety equipment. *Auslander*, 558 S.W.3d at 467.

know, is the landowner liable for the contractor's injuries absent a warning.

*Dexter*, 577 S.W.3d at 795 (internal quotation marks and citations omitted).

In other words, Moore had a duty to warn Willoughby of (1) hidden or latent defects; (2) that Moore knew about; and (3) Willoughby did not or could not discover himself. In contrast, if we accepted Willoughby's argument that he was a business invitee, Moore would have owed Willoughby a much more stringent duty "to *discover* unreasonably dangerous conditions on the land and either eliminate or warn of them." *Shelton*, 413 S.W.3d at 909 (emphasis added).

There were no hidden or latent defects on the roof. Willoughby blamed his fall on unstable footing due to debris on the roof. Debris is not a hidden or latent defect. There is no evidence that Moore knew any more about possible debris on the roof than Willoughby could have discovered for himself when he climbed the ladder. Moreover, it is undisputed that Moore had never been on the roof of the barn. Although he agreed to remove items from the side of the barn that would impede Willoughby's sprayers, Willoughby only *assumed* Moore would also inspect the roof of the barn and remove any debris.[6] There is no indication in the record that Moore agreed to do so. Willoughby admitted that when he arrived to paint the barn, he believed Moore only completed

---

[6] *See* page 37 of Willoughby's deposition.

-8-

approximately half of the preparation work he had anticipated. Nevertheless, Willoughby chose to move forward with painting the barn and roof. Willoughby also admitted he had better knowledge than anyone about the condition of the roof once he accessed it from a ladder. Accordingly, Willoughby failed to show a breach of the applicable duty of care and there was no negligence as a matter of law.

Willoughby also argues his premises liability claim should move forward independently. This argument is both baffling and without merit as this *is* a premises liability case. *See Dexter*, 577 S.W.3d at 795. As far as Willoughby's argument that his general negligence claim should move forward, we are unpersuaded. To recover, Willoughby would have to be something other than an independent contractor and it would also necessarily mean Moore owed Willoughby a different duty under the same set of undisputed facts.[7] Willoughby's argument must fail.

Finally, Willoughby argues that discovery was not yet complete. We note the circuit court did not enter a discovery order. At the time the Moores filed their motion for summary judgment on January 31, 2022, they had deposed Willoughby and Willoughby had deposed Dan Moore. The parties had also

---

[7] Willoughby briefly states that his negligence *per se* claim should also move forward, but does not provide any applicable statute as the basis for this claim, nor did he provide it to the circuit court. Because he does not expand on this argument, we decline to address it.

answered interrogatories, requests for production of documents, and requests for admissions. When Willoughby filed his response to the motion for summary judgment on March 22, 2022, he also submitted additional discovery requests to the Moores on the same date. Specifically, Willoughby requested to inspect the barn and asked for additional documentation pertaining to repairs and maintenance of the barn in the last ten years. Willoughby submitted additional discovery requests after the circuit court granted the motion for summary judgment. The circuit court entered summary judgment despite Willoughby's outstanding discovery requests and denied his motion to alter, amend, or vacate based, in part, on outstanding discovery. We discern no error.

> Although a defendant is permitted to move for a summary judgment at any time, this Court has cautioned trial courts not to take up these motions prematurely and to consider summary judgment motions "only after the opposing party has been given ample opportunity to complete discovery." *Pendleton Bros. Vending, Inc. v. Commonwealth Finance and Admin. Cabinet*, 758 S.W.2d 24, 29 (Ky. 1988). Thus, even though an appellate court always reviews the substance of a trial court's summary judgment ruling *de novo, i.e.*, to determine whether the record reflects a genuine issue of material fact, a reviewing court must also consider whether the trial court gave the party opposing the motion an ample opportunity to respond and complete discovery before the court entered its ruling.

*Blankenship*, 302 S.W.3d at 668.

Further,

> [w]hether a summary judgment was prematurely granted must be determined within the context of the individual case. In the absence of a pretrial discovery order, there are no time limitations within which a party is required to commence or complete discovery. As a practical matter, complex factual cases necessarily require more discovery than those where the facts are straightforward and readily accessible to all parties.

*Suter v. Mazyck*, 226 S.W.3d 837, 842 (Ky. App. 2007).

This is not a complex case. Willoughby claims he fell off the roof of Moore's barn due to debris that caused him to have unstable footing. This is unrelated to any structural or maintenance issue and was not a hidden or latent defect of the barn. Willoughby fails to explain what evidence he hoped to glean from inspection of the barn nearly two years after the accident. After the circuit court granted the motion for summary judgment, Willoughby noticed numerous depositions, including Tina Moore and various individuals who worked on or in the barn in the past. However, Willoughby fails to articulate how any of these people could offer controverting evidence to his own assertion that he fell due to debris on the roof. The circuit court did not abuse its discretion when it implicitly determined sufficient time for discovery had passed when it granted the motion for summary judgment.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the Jessamine Circuit Court is affirmed.

ALL CONCUR.


| BRIEFS FOR APPELLANT: | BRIEF FOR APPELLEES: |
|---|---|
| Sandra M. Varellas | R. Craig Reinhardt |
| D. Todd Varellas | Neal J. Manor |
| Lexington, Kentucky | Lexington, Kentucky |